In The United States District Court
For The Southern District of Texas
Houston Division

United States Courts
Southern District of Texas
FILED

MAY 11 2022

Nathan Ochsner, Clerk of Court

Iron Thunderhorse,
on behalf of himself
and all other TDCJ
inmates, similarly
situated,
    Plaintiffs,

CIVIL ACTION

VS.

NO.

TDCJ Executive Director,
on behalf of himself,
and all other TDCJ
officials, their agents,
employees, representatives
and third-party vendors
acting in concert with
them at all TDCJ-UTMB
facilities in their
official capacity,
    Defendants.

ORIGINAL

COMPLAINT

CIVIL RIGHTS
42 U.S.C. § 1983

May    , 2022.

PREAMBLE: This is a COMPLAINT - brought pursuant to U.S. CONSTITUTION, Supreme Law of the Land provision - pursuant to Article VI, Section 2 invoking authority over the U.S. Constitution, Federal statutes and Treaty Law.

This action seeks redress from deprivations of RIGHTS secured by the U.S. Constitution, Federal statutes and International Laws (Infra) where TDCJ policies, practices, and facilities represent an ongoing pattern of deliberate indifference, gross negligence, in a pattern requiring inadequate, improper housing, medical care, transportation and under staffing relevant to elderly, disabled, chronically ill prisoners isolated in RESTRICTIVE HOUSING constituting cruel and unusual punishment

COVER PAGE

I. Jurisdiction and Venue.

A.) This Court has jurisdiction under —
— 28 U.S.C. §§ 1331 and 1343 (a)(3) related to Federal Questions.
— 28 U.S.C. §§ 2201 and 2202 relative to declatory relief.
— 28 U.S.C. §§ 2283 and 2284 as well as Rule 65, Fed. R. Civ. P.
— 28 U.S.C. § 1346 Supplemental Jurisdiction.

B.) Federal Statutes —

— 42 U.S.C. § 12101 — Americans With Disabilities Act.
— 42 USC § 12012 2008 ADA Amendments
— Section 504 — Rehabilitation Act.
— 28 C.F.R. Part 35 Anti-Retaliation Provision.

C.) International Treaty Laws —

1.) The Universal Declaration of Human Rights (UDHR).

2.) The Convention on the Rights of Persons With Disabilities (CRPD)

3.) The Convention Against Torture (CAT).

D.) State Law Claims —

1.) Breach of Contract — relevant to the RUIZ v. ESTELLE H-78-987 Consent Decrees on issues of FAPD and Laws, as well as the adjudicated history demonstrating patterns and a culture of deliberate indifference

2.) Title 8 of Texas Human Resources Code — Rights and Responsibilities of Disabled Persons.

PAGE 1

h) The United States District Court For The Southern District of Texas, Houston Division is an appropriate venue under 28 U.S.C. Section 1391 (b)(2) because it is where events giving rise to this action occurred, and where TDCJ Defendants reside, develop policies, practices and maintains its Region 1 headquarters.

II Plaintiff Represent atives and Purtrial Plaintiff class.

1) Plaintiff on behalf of himself and as Representative for a partial class of all other TDCJ prisoners who are elderly, are chronically ill, and have major disabilities, and who are now and have been confined to long-term isolation and solitary-like conditions under the TDCJ Restrictive Housing plan is Leon Thunderhorse, TDCJ No. 624391 of Polunsky Unit 3872 FM 350 South, Livingston, TX 77351-which is under the purview of TDCJ's Region 1.

2) Plaintiff Class Representative Leon Thunderhorse, TDCJ No. 624391, is 78 years old and has been in continued TDCJ's custody since 4-12-1995. He is wheelchair dependent and has multiple disabilities, primarily BLINDNESS and LOW VISION. He has been consigned to RESTRICTIVE HOUSING at various TDCJ units as an ADS (ADMINISTRATIVE DISABILITY SEGREGATION) since 2013-14.

3) The partial class described herein is so numerous that JOINDER of all PARTIAL CLASS MEMBERS is

PAGE 2

impracticable.

4.) There are questions of Law and Fact
common to the members of the
Partial Class. Whereas -
  TDCJ has close to one-hundred (100)
prison units and where 80% to 85% of
the total TDCJ population falls within
the Partial Class.

5.) The Claims and Defenses of the
class Representative Plexty are typical
to the claims and defenses of the
other potential class members.

6.) Plaintiff Representative Plexty
Iron thunderhorse will FAIRLY    ADEQUAT-
ELY, and with 44 years experience, TDCJ
interactions and participation in RUIZ v.
ESTELLE, 47 yrs-98 a class member.

## III DEFENDANTS are -

1.) TDCJ Executive Director, Bryan Collier
and his successors in office who serves as
Class Representative. P.O. BOX 99, Huntsville, TX
77342-0099 TDCJ-CID Region I OFFICE, @
1225 Avenue G, Huntsville, TX, 77342-00 99.

He is sued individually and in his Official
Capacity on behalf of himself, and all
other TDCJ agents, employees, representatives
and Third-Party Vendeos acting in concert
with them at all TDCJ-UTMB facilities, each
in their official capacity.

2.) There are questions of law and fact
common to the class. which is so num-
erous that JOINDER of all parties is
impracticable.

PAGE 3

3) ... are and facts common to the members of the defendant party class, whereas the issues addressed by the facts herein are common to situations that are re-occuring and have occured throughout TDCJ at a majority of TDCJ units.

4.) The claims and defenses of the Defendant Class Party Representative are typical to the claims, defenses and representations of the defendant party class.

5.) Defendant Party Class Representative Bryan Collier TDCJ Executive Director will fairly, adequately represent the interests of all other Defendant Party Class Members.

6.) Defendant TDCJ Executive Director is legally responsible for — the overall operation of TDCJ. His duty under Texas law is to appoint Deputy directors of the six (6) TDCJ Divisions, and to promulgate policies and practices that comply with clearly ESTABLISHED LAW. All Defendants are responsible for the health care suffering/welfare of all TDCJ prisoners including, but not limited to Plaintiff Leon Theldohore, Class Representative and all other Plaintiff party class members.

7.) Defendants are all sued in their official capacity, and pursuant to the nature of supervisory capacity (liability).

## IV. TIMELINE/ STATUTE OF LIMITATIONS

1.) The incidents complained of herein all occured between May 2020 and May 2023 at the TDCJ Wainwright Unit and TDCJ Estelle Unit.

Case 4:XX-cv-XXXXX Document XX Filed on 01/02/XX in TXSD Page 6 of 30

2.) The 4th incident occurred on 01/02/in TXSD were typical to similar to past incidents and similar deprivations suffered by the P County which represents an ongoing pattern ongoing and repeated acts of deliberate indifference as a direct result of repeated acts and a culture of negligent actions, systematic deprivations, in housing conditions for the elderly/disabled while providing collegiate housing and adequate accommodations for the disabled who are younger and who are not confined to Restrictive Housing, which includes programs, programs services and activities.

3. The incidents and deprivations that are complained of herein are also typical and common to a pattern of ongoing acts that all have been subject to the County enforcement and therefore relief which resulted in CONSENT DECREE and constitute acts of negligent and deliberate subterfuge, deliberate subterfuge actions that amount to failure or desist contempt and to breach of contract enforceable under state law.

4.) The actions complained of herein also demonstrate that plaintiff Class Representation von Thundershorse is viewed as personnel non Grata due to his experience, expertise and activism that strives to bring about social CHANGE vindication of Constitutional rights which is a form of POLITICAL EXPRESSION and POLITICAL ASSOCIATION protected by clearly established law. Yet plaintiff von Thundershorse has been repeatedly subjected to a campaign of harassment in the form of retaliation, retaliation and represents in the general tropes discriplined crises as a tool to deprive him of his liberty interests.

PAGE 5

1) In May of 2020 Plaintiff was GM Line 1 custody. He was transported by TDCJ wheelchair van and arrived at the TDCJ Polunsky Unit and assigned to Infirmary 11B BUILDING ROOM 10-09.

2) That room upon his arrival had no electricity, the air condition in that room was not working. The life 1960's metal hospital bell also did not work.

3) Plaintiff was left out to shower or bathe in the shower/bathtub room until regular leases, and each time he went there Effie Mivenson, CDJ would call the SST / Porter to clean his room with bleach despite the fact that Plaintiff is allergic to bleach, informed staff and documented Miscellaneously and noted a NOTE written in BOLD RED PEN.

4) When Plaintiff complained to her she became belligerent and showed "if you don't tell me what to do I'll tell you what to do" Thus began a continuing of harassment spearheaded by her.

5) At that time the only equipment in Rosenburg was a hospital gurney tray that refused to roll in to raise up or down as it is designed to do.

6) TDCJ Inmate Orientation Handbook unequivocally maintains that —
"Metal, Fire-resistant closable, storage containers are provided for storage of an offender's property" ... "Section J property 46.5 on page 20. There was no locker in the room to cell his legally personal, medical and special medical property files

7) Previously, at Mark Stiles Unit before his transfer in mid-May 2020, the Stiles Infirmary rooms Plaintiff seen included a metal locker for property, a bedside cabinet with a drawer and shelf and a functional bedside serving tray. That room also included a flat screen television which was positioned next to his bed on top of the cabinet.

8) At Polunsky rooms there was no television, nor any form of recreation at all. Both Polunsky and Stiles Units are post Michael Unit prototypes situated with identical design structures.

9) In the month of July 2020 Stiles Unit developed a Covid-19 crisis in General Population. Several SSI's & FMC's support service inmates were re-assigned to Polunsky Infirmary to Building 6 to be Quarantined.

10) One day as Plaintiff went to shower, he had left one of the five (5) bags of property he had to keep stacked at the end and one side of his bed due to the fact that one of his medicators is an abdominal hydration [stoma unit in a bag] and all his medical restrictions (78 M/R) here "No Bending at the waist" and "No squatting". Because he had no locker or cabinet for storage all his property had to be kept on his bed and this caused him to lose 2 feet of space to stretch out, causing him constant pain and suffering and less of sleep.

11) At that time Inmate Maddox SSI was housed in no-01 directly across from Plaintiff's room 10-09.

PAGE 7

12.) Inmate Jonathan Chupp was assigned to 10 BLDG Infirmary 10-02.

13.) In one incident Plaintiff had been let out to shower who wheelchair. He had left a bag of personal property on the floor next to and leaning against his bed. In that particular bag he had stored —
   1.) a nightlight w/ new bulb.
   2.) padlock and key
   3.) Hot pot
   4.) verible hygrene items
   5.) plastic shaving mirror
   6.) commissary items
   (total value of 100⁰⁰)

- 13) when he returned and could not find the bag of property he was told by the SSI that EEFIE VENSON, C1919. Had thrown it out claiming "Anything left on the FLOOR is trash"

14.) Inmate Chupie was in the hall one day in July 2022 and was looking to SSI Mucdoo in Room 10-01. Because Plaintiff was functionally blind at the time he could not see what was occurring yet he could hear traindsuffy Suddenly, Chupie stuck an object with his elder — left in a hurry and a tram of ranking officers came to his room. (Jonathan Chupie, #1998997).

15.) Plaintiff spoke to the Lieutenant and explained this grey chupie about this under my door. It was a high-off stone bebee being clothes hanger. The Lt said Plaintiff would not get a disciplinary case but someone else would to do so.

16.) Inmate Jonathan Chupre, # 1998472 did not receive a disciplinary case (as the duty lieutenant indicated) however this Plaintiff (Iron Thunderhorse # 629341) did receive a disciplinary case from an Incident that reflected it was a weapon sharpened to a point which is false.

17.) The Polunsky Unit Counsel Substitute advised Plaintiff with NOTICE. A: And Plaintiff indicated verbally that he would represent himself, that he wished to make a statement on the record, call witnesses and introduce documentary evidence as well. Plaintiff was denied a hearing and he assumes that the disciplinary captain ran the case in ABSENTIA.

18.) Plaintiff DID NOT receive any COPIES of such a hearing.

19.) Inmate Chupre had SELF INFLICTED wounds where he had cut open his own abdomen so severely he had to have a colostomy bag.

20.) Plaintiff investigated, learned that Chupre in Room 10-03 and Sgt Maddox Room 10-01 were by any means Chupre was receiving (purchasing) prescription Morphine from other inmates when he was let out to shower each day.

21.) Plaintiff learned that it was Major Troy Vincent who ordered charges be filed against this Plaintiff instead of Chupre in order to cover up the crimy / drug connection between Chupre and Maddox.

PAGE 9

22.) [illegible] such [illegible] on [illegible] to the TDCJ Estelle Unit in Huntsville. Texas and assigned to the Regional Medical Facility 2ND FLOOR, North Pod.

23.) Plaintiff was subsequently placed in RESTRICTED HOUSING STATUS which replaced the Administrative Segregation Plan and Status. Due to Plaintiff's many disabilities, however, he remained less suited to Robensky Infirmary 10-B206 Room 10-01 whereas his Special Needs and HSM-18 Medical Restrictions could not be accommodated in Robinsky B. Building where Death Row and Ad Sey Restrictive Housing inmates are housed

24.) Plaintiff's assigned Room at 10-01 even after the electricity and A.C. was needed in lieu, he ADM [?] wheelchair accessible [illegible] it was never [illegible] than compliant with federal and state disabled rules and in fact all as TDCJ Policy [illegible] that Infirmary [illegible] rooms [illegible] with all TDCJ Roof MACHINE was [illegible] there also NON WHEELCHAIR com. PLIANT.

25.) Plaintiff's assigned rooms at Robinsky Unit Infirmary did NOT have a handicapped toilet too small. It [illegible] did not have rollers anywhere the room. Other TDCJ Units such as Estelle High Security and Ben Leuis High Sec Units, Boyd Unit by Restrictive Housing, they have wheelchair compliant with all accommodations, handicapped Beds, SINKS and toilets, wheelchair compliant handicapped showers, outdoor recreation, handicapped chair, and much suites that has more wheelchair compliant cells at 7-Building than Restrictive Housing.

PAGE 10

26.) During the period from Nov.
2020 to May 2022 and the period from
November 2017 to May 2020, the Post
Michael Unit prototype such as Estes
Unit, have retrofitted 14 BUILDING Dorm-
itories and in Pre-Michael Units such
as Estes Unit, the into leaves TDCJ
continues to use ADA "RETARDED HOUSING" areas
which provide cell - wellness DINING ROOM,
DAY ROOM, Churches, handicap shower,
handicap cell Toilets and SINKS, TELE-
cell doors for medical care, cafeteria,
recreation, television and phone access
and have been cell handicapping.

27.) TDCJ accommodations at most Post
Michael Unit Into Merges do not
have this level of handicap accommodated
in access in 05 AD State Post Unit '00
Houses With Ramps his personal
knowledge he witness he has been
assigned to BYRD, ESTELLE, SISTER III
BOYD ROLLINSKEY, ESTELLE RMF, GIB LEWIS
H5 between 2015-2022. The disposition in
wheelchair compliant access of cell
areas the restroom.

28.) From May 2020 to July 2020
Plaintiff was allowed out of his
cell daily to use the bathtub and
wheelchair compliant wheelchair
accessible handicap shower with
wheelchair ramps.

29.) After July 2020, however Plaintiff
has been unable to use the wheelchair
accessible compliant shower with a shower
sump as the bathtub in the shower
fell Byrd. Plaintiff Unit has a steel
cell with a 4 inch curb, no sump, that
is inaccessible to him, a trip area are
but, the cell doors that do not

have window locking devices or field
drawn locking shots available on the doors
of the infirmary rooms. Consequently, because
Polunsky security unit maintenance have
not approved that area to accommodate
all inmates who are assigned to Restrictive
housing which includes elderly disabled
prisoners, including Plaintiff. This failure to
approve this area has caused Plaintiff to
be deprived of a proper shower or bath
due to this failure.

30.) Consequently, Plaintiff has not have
a shower or bath from July 2020 to
the history of this action (except for a
five (5) month period he was assigned to
Estelle Unit Regional Medical Facility for
Physical therapy in his hands and wrists
due to osteo-arthritis, and carpal-neuropathy
in his hands/wrists.

31.) Plaintiff had his first eye surgery on
12-01-2020. He was transported to UTMB
hospital in Galveston, where the EYE CLINIC's
CORNEA SPECIALTY CLINIC performed a Traube
procedure where a 4.9 mm abscess white cata-
ract was removed, a transplanted cornea
from a cornea bank was enabled and a
center implant was surgically inserted. On
after surgery Plaintiff was scheduled for
weekly visits and a regimen of eye care
medications including ANTI-REJECTION medicine
was ORDERED.

32.) Plaintiff was forced to do all his
own eye care therapies at Polunsky Unit
infirmary the policy transportation is that cell
DAILY VITAL sign outs but accurately is done
only when the inmate is led back to
showers, and consequently Plaintiff was
deprived of his service that he should

available to him at either TDCJ units during the same time period and at provides time at different units but on the same custody level etc. Plaintiff has confirmed with ranking officers at Polunsky Unit that level of security is maintained because DEATH ROW is housed in the C-11-12 Building RESTRICTIVE HOUSING Area.

22) This eye care consisted of eye checks and ointments at times advised. Any difficulties he had staunchly as a matter and first tried; so he did this himself.

24) Plaintiff was scheduled for Post-OP visits in January and February of 2021 but severe weather in January and the February Freeze in Texas precluded his Post-OP appointments.

25) The prescribed steroid anti-rejection drops ran out quickly and Polunsky unit does not stock them so consequently the treatment was being negated. His surgical activity continued to get worse until the lesion in his right eye was lost rendering his right eye blind.

26) Plaintiff suffers from OSTEO-ARTHRITIS, NEUROPATHY, and GOUT in his hands and wrists. This combination rendered him unable to perform daily living tasks that became acute. He was thus transferred to Estelle Unit's Regional Medical Facility. He was reassigned to Estelle R.M.F. from July 14th 2021 and was returned to Polunsky Unit infirmary on November 17, 2021, a period of about two months.

PAGE 13

27.) When Plaintiff arrived at Ferguson Unit, his medical care was assigned to Ernestine Julye, M.D. She changed many of Plaintiff's SPECIAL NEEDS PASSES, so that 1.) they conformed to "SECURITY'S" wishes and 2.) reversed previous special needs passes that caused him extreme pain and suffering.

28.) Such passes included but was not limited to 1) "NO SHORT CUFFS BEHIND BACK" which replaced "Front cuff pass" that had existed since 1992 and is CONTRARY to his specific needs whereas he has a well documented "Frozen shoulder" and cannot get his right arm behind his back.

29.) There are in fact Three (3) different restraint (cuffing) Special Needs Passes initiated by Dr. Julye which actually reflected his restraint passes including "No cuffs to Boms" (DDM) and "no leg restraints while walking" which renders all special needs passes so vague and ambiguous as to be arbitrary and capricious.

30.) In January 2022 as Plaintiff was scheduled to go to a Specialty Clinic in Galveston (Plaintiff's Specialty was "no restraints while walking") to the transport officer who controlled Plaintiff's transport he stated "Medical doesn't run Ferguson Unit, Security does" and "he wants his legs shackled."

31.) Each time Plaintiff is transported Security uses metal handcuffs, with a BLACK BOX which causes the cuffs to twist, slide and imbed themselves into his wrists causing welts, swelling, bone bruises and

PAGE 14

raises his blood pressure to dangerous levels that is another sign of serious risk for stroke or heart attack.

32) "These restraint options demanded by Polunsky security use was in contrast with previous restraint options recommended by UTMB medical when the Plaintiff be placed restraints used at STILES UNIT when he was transported to UTMB Galveston hospital just prior to his transfer to Polunsky.

33) "The transfer from Mark Stiles Unit Infirmary to to Polunsky U-09 which occured in May 2020 allegedly occured due to the re-designation of STILES Infirmary to a Covid-19 Quarantine area.

34) At that time he was scheduled to be housed in G building sheltered Housing and was unaware of this to two Stiles nurses Lights nurse Nurse Wecht and white male Nurse Sonye.

35) Plaintiff however has reason to believe he was transferred to polunsky as a result of retaliation for an incident that occured just prior to his transfer.

36) Plaintiff also states that Dr Cutting LP from UTMB Galveston will discharge him from the infirmary and re-issue him into Estelle Unit Geriatric Center.

37.) During and throughout 2020 - 2021 Plaintiff repeatedly submitted sick call Requests and Informal Resolutions to Dr Ernestine Julye who returned them to him indicating he could not use sick call to tell the nurses his problems.

PAGE 15

38) From his arrival at Polunsky Infirmary Room 10-69 through the Fall of 2020. There was no television in his room. Televisions were situated in all other Polunsky Infirmary Rooms, except his, due to the RLUIPA ESTATE CONSENT DECREE wherein both parties had agreed Television was an acceptable alternative to RECREATION in situations where recreation was impracticable. Plaintiff filed Informal Resolutions and grievances and finally succeeded in having a television installed in his room 10-69 all TV's are placed in a secured cell. Steel shelf bolted to the wall and at Polunsky these TVs are also screwed tight to the shelf so it could not be moved.

39) As a result that TV was situated above the height of Plaintiffs head and even extending his arms he could not reach the control buttons on top of the TV set. Plaintiffs HSM-18 medical restrictions includes "No reaching over shoulder." So this predicament was problematic. The only way he could operate the TV was to climb on top of the bed and this too violated his HSM-18 restriction as "No climbing" which created a dangerous catch-22 situation.

35) When Plaintiff wrote for his first cup surgery at UTMB Galveston in December 2020 he was off the Polunsky Unit for several days, and his property was left in the room. Pursuant to departure his SANYO TYPEWRITER was fully operational. Plaintiff left it in a knit sock when mesh commissary bag on top of his desk. An electric hospital bed that was locked in a wheel lockin position was activated. When he returned he found his typewriter on the floor. He plugged it in and it was broken.

PAGE 16

36.) Plaintiff attempted written and verbal informal resolutions with ADS (Assistive Disability Services) as he has been assigned to ADS since 1992 and he also submitted a formal grievance because he has been TYPE WRITTEN DEPENDANT since 1992, but no longer has ability to purchase his own, and TDCJ-Longview refuses to allow him to access a computer system. They have COMPUTERS FOR THE BLIND facility, TX which will keep it at 6000 clients in a ____ TDCJ is subjecting inmates on General Population to ____ ____ ____ injury to the exclusion of TDCJ thereby disabled inmates in RESTRICTIVE HOUSING.

37. Plaintiff began experiencing extreme pain and inability to use his hands due to Neuropathy, Gout and Osteoarthritis. He was sent to the Brace and Limb Clinic at ESTELLE RMF on July 13, 2021, Ms A. Gonzalez ~ PT or Therapist. Because that Clinic was on the 2nd floor and the ESTELLE RMF elevator was broken, she had to examine Plaintiff on the 1st floor because he cannot ____ or ____ stairs. She prescribed ____ finger supports with plastic wrist splints and wheel chair padded gloves and explained that he needed "Long Term" therapy. He was ____ back to ____ the same thing.

38.) Plaintiff submitted informal written resolutions and grievance upon his return when it became apparent he really need and would not get the therapy he needed ____ at ____ that as a result he was transferred to Estelle Regional Medical Facility for that therapy on July 14th, 2021. He was assigned to RMF Sixth Building 2nd Floor Room SP-202 On July 15, 2021 he was given a medical exam by N.P. Congdon.

PAGE 17

39.) When Plaintiff arrived at Estelle RMF he was taken up several flights of stairs since STAIR CHAIR which was dangerous and hurt his back and abdomen each time. This process was used many times from July 19-2021 to his return to Polunsky center clinic in December 2021.

40.) Plaintiff was treated very differently at Estelle RMF. The nursing staff came directly into his room every evening at 6-7PM, when he was manipulated dressing and positioning so he was comfortable every time someone came into the room.

41.) He went to three weekly therapy on the same both able-bodied. He had access to wheelchair exercises. Shower accessible to nursing staff.

42.) He did not have access to a TV set or recreation during his stay at Estelle RMF.

43.) At Estelle RMF Plaintiff sent Kimberly Cotten, ADA Coordinator a long written immediate reselection requesting a wheelchair replacement for typewriter etc. Estelle RMF is the only TDCJ facility that has access to computers. He was given access to it on his legal day there without NOTICE. He noted that these computer screens were completely different than when he had set it up but were not set up for the visually impaired as they had been set up previously.

44.) While housed at the Estelle Unit RMF Facility, (July 14 - December 2021) Plaintiff received PT-OT Therapy. He filed Grievances indicating that comparing to prior PT-OT for upper body extremity the 2021 therapy was inadequate, and perfunctory. The Grievance Response stated there were seven weeks of OT - when in fact it was only hours, of also indicated there were 10 no-shows. Plaintiff avers that he never responded for eight (8) of these no-shows due to the sleepers night of pain.

45.) At Estelle RMF - NP Gong Dan ordered a cause for him. PT-OT McBride came to his scein with a one point came knowing this type of care would be useless due to his Neuropathology disorder. Mr. McBride stated, "You cannot have a wheelchair and a cane." Plaintiff responded, that a 4-point cane was appropriate and he produced a TDCJ SPECIAL NEEDS ADVISORY recommending both a cane and wheelchair. Plaintiff has his own physician states so AOS would only need to provide the 4point cane, which AOS did not provide. Plaintiff when transferring from wheelchair to commode has no railings in the room, or appices to the toilet so he often falls back on the seat which creates unnecessary pain. He was accompanying an RMF charge nurse who felt a 4 point cane would help so NP Gong Don ordered it. Plaintiff believes this denial was a form of reprisal for filing grievances against AOS, PT-OT and the Estelle RMF.

PAGE 119

46) While housed at Estelle RMF Plaintiff submitted an Informal Resolution of his grievances to Kimberly Cotten ADA Coordinator requesting access to a Typewriter, or computer in that whereas he has been typewriter-keyboard dependent since 1492. He also complained that the CCTV Reader and Adaptive Devices Classes providing necessary access to computer, printers and special Bishop Typing courses were only available at Estelle Unit. Plaintiff was transferred back to Polunsky not long after this and based his experience and prior acts in similarly situated issues he believes the transfer was a response for his grievances and attempts to resolve them and keep a history of patterns of deliberateness.

47. When Plaintiff reached Polunsky Unit after the transfer he was assigned to infirmary room. This room has a television that was defective wherein it had no adapter to the cable so in prompt saying it "No Signal." appeared

48.) Plaintiff filed in request to have it fixed but maintenance failed to do so ten months so he filed a CCDI grievance the following day left again. It was serviced on a steel shelf above his head so he again filed a separate grievance to have it lowered and finally on April 26, 2022 maintenance came back and lowered the shelf where Plaintiff might reach to only his recent and significant time members accessible TV set

PAGE 20

49). Back at Polunsky on 1-10-2022 Plaintiff filed a grievance complaining that in the 2 years he has been subject to Administrative Seg rejection / Restrictive Housing. he has only been notified twice of REV/Pie HEARINGS cell I-8 POST TACT and is consequently denied due process and equal protection to PRIOR NOTICE as guaranteed under the RUIZ V. ESTELLE consent decrees.

50.) On or about April 20, 2022 assistant Warden B. Rigsby signed the official response which stated:
"An investigation was conducted. You are currently assigned to the Estelle unit..."

51.) Plaintiff's STEP-2 states that it does not matter what unit he is assigned to or where he is housed/incarcerated — he is entitled to Prior Notice under the due process standard ordered in the RUIZ court (U.S. Dc, S.D TEX, Houston) See evidence No. 2022-5 (433) STEP 1

52.) From 2015 upon his return to TDCJ, through 2020 Plaintiff's HSM-18 Medical Restrictions listed his mode of transportation as wheelchair van. When he arrived at Polunsky in 2020, however, Ernestine Julye, changed his HSM-18 mode of transportation to EMS Ambulance. Due to the number of his medical issues lying flat on an ambulance gurney causes him extreme pain and elevates his blood pressure.

PAGE 21

53.) Plaintiff filed grievances each time he was transported by EMS ambulance. [illegible], his HSM-18 was changed back to his mode of transportation as wheelchair van, [illegible] this change he [was] transported from Polunsky Unit to [illegible] Galveston by wheelchair van [illegible] on April 11th 2022 and April 13, 2022. Then on April 20th an EMS ambulance arrived to transport him to Galveston. He refused [for the] first time in three years.

54.) On the [illegible] [of] April 2022 inmate Jeffrey Wayne Kelly, No. 2218697, Polunsky Infirmary no-4, [illegible] Plaintiff [illegible] [illegible] two(2) separate bloody [illegible] Emergency Medical [illegible] [illegible] which [illegible] policy [illegible] B112 V. [illegible] CONSENT [illegible]

55.) During Plaintiff's assignment to Polunsky 12-04 infirmary he was previously pull-ups [illegible] he was previously at Jester IV DETO] and SMLES units, as well as at [illegible] RMF. But when he returned to Polunsky and [illegible] Aug, [illegible] pull-ups for him some [illegible] person in [illegible] ear refused to approve the [illegible] [illegible] so Plaintiff's [illegible] [illegible] [illegible] blood spots and external [illegible] to his problem with external hemorrhoids.

56.) Plaintiff [illegible] [illegible] attempts to go to the wheelchair ramp handicap shower and the leaf was [illegible] [illegible] shower is broken and maintenance does not [illegible] the [illegible] to fix as all locks cannot be [illegible] on the doors as it is a "safety hazard"

PAGE 22

57.) Subsequently Plaintiff has not showered in approx. with in close to two (2) years of Polunsky unit, despite his efforts to informally resolve the situation and to file grievances.

58.) Plaintiff also has no Teeth (Dentures/Dentu) and GERD so properly masticating his food is a problem causing choking and distress. The Dental Department at Polunsky refused to examine him for dentures, implying stating his problem was not an emergency.

## VI. AVAILABLE ADMINISTRATIVE REMEDIES

1.) Plaintiff has a claim or to completed STEP 1, STEP 2 Grievances

2.) He has copies of COPIES of his informal resolutions to OFFICIALS,

3.) He also has a dozen or so grievances returned from record as custodian necessary. He maintains are in denied compliance with AD-03.82 " Management of Offender Grievances Manuals. Copies were attempted "unavailable.

## VII. CAUSE OF ACTION

A. CONSTITUTION AL LAW VIOLATIONS.

FIRST AMENDMENT CLAIM

• Defendants actions deprived Plaintiff Bruce Thunderhorse of his RIGHT to petition the government for the redress of grievances as acts of reprisely retributory retaliatory for seeking to file grievances, as part of his

PAGE 23.

ongoing culture and ethics reprisals against TBC/TDCJ inmates in general and Plaintiff Ivan Thunderhorse, in particular, which constitutes a pattern of similar retribution recognized and previously protected by the Courts.

**EIGHTH AMENDMENT CLAIMS:**

* The actions of defendants coupled with their failure to deprive the Plaintiff of his RIGHT to be free from cruel and unusual Punishment in violation of the 8th amendment whereas –

* Under the TOTALITY OF CIRCUM-STANCES the combined together have involved a "physical torture" and over 43 years of gross deliberate indifference equates to a "lingering death", as a result of constant pain and suffering.

* due to the wanton and needless subjection to constant ongoing pain and suffering as a result of defendants actions of deliberate indifference to Plaintiff's chronic medical conditions and numerous disabilities.

**FOURTEENTH AMENDMENT CLAIMS**

* Defendants actions denying him PRIOR NOTICE OF AD.SEG.'s Restrictive Housing Status delivered ex post FACTO deprived Plaintiff of procedural as well as substantive due process of law for the past two years (2020-2020).

## B. FEDERAL LAW/Statutes VIOLATIONS.

* AMERICANS WITH DISABILITIES ACT (ADA) 42 U.S.C. § 12101 (2000)

* Defendants TDCJ are a "Public Entity" who receives federal financial assistance.

* Defendants actions denied him the programs, services and activities enjoyed by others in different TDCJ custody levels, and by the P-lmentiff at other TDCJ units in his present custody status which was a disparate impact on Plaintiff.

* The actions of defendants who have repeatedly subjected him to reprisals and retaliation violates the ADA Anti-Retaliatory Clause (42 U.S.C. § 12134 (b).

* The actions of defendants that fail to provide him reasonable accommodations for all his SPECIAL NEEDS as defined under 42 U.S.C § 12101 - 2000 ADA Amendments and their act of subterfuge, freuds and refusal to stem the ADS Instructions/Directive on the Management of Special Needs Offenders in 2004 is a prima facia showing of deliberate indifference.

* Defendants recent unwillness to allow Security to provide like TABLETS to healthy general population inmates here to enclude elderly disabled prisoners in Restrictive Housing violates the unconstitutional provision of Section 504 of the Rehabilitation Act (29 U.S.C. § 794 - Section 504 - (a) '73).

PAGE 25

# C.) STATE LAW CLAIMS

1). TEXAS TORT CLAIMS ACT — over the deliberate distruction of personal property as part of a campaign of harrassment, not legitimate confiscation.

2) BREACH OF CONTRACT — feels the deliberate malicious of disability terms WISHEN LAW by ignoring the COURT DECREE in Ref 2 B, Exhibit, H-18-ect.

# D. INTERNATIONAL LAW VIOLATIONS.

* The actions of defendants violate The Universal Declaration of Human Rights wherein the inherent dignity of all pertmain to the freedom of peace and justice to governments.

* The actions of defendants violate The Convention on the Rights of Persons with disabilities which requires the STATES to promote, protect and ensure the full engagement of human rights by persons with disabilities.

* The actions of defendants violated the Convention Against Torture which requires STATES to take preventive measures to "prevent torture".

# VIII. PRAYER FOR RELIEF.

WHEREFORE, Premises Considered, Plaintiff respectfully prays that this honorable court GRANT RELIEF to the Plaintiff and Plaintiff Fees the following judgment in his favor:

A.) A declaration that the acts,
omissions, policies, practices, lack of
equipment, proper ADA accommodations
and reprisals declared herein violated
Plaintiffs rights under -
- the U.S. constitution,
- Federal law,
- state law
- International venue law

B). A declaration that the acts of
defendants regarding RULZ in EXHIBIT
H-98-487 related to the Consent Decree
constitutes a Breach of Contract.

c.) A preliminary and permanent
injunction ORDER w/ the defendants -

- to transfer Plaintiff to his domicile
place of BIRTH, Connecticut Department
of Corrections, and

- to submit a comprehensive plan
to either release or otherwise Place him in a
similarly situated w/ In Residence
T.C.O.U.R.R.I. to fund nursing facilities
for their nursing of him.

D.) Compensatory damages in the
amount of $15,000.00

E.) For Plaintiffs costs in this suit

F.) For a Jury Trial on all issues triable
by Jury under the 7th Amendment

G.) any and all differences relief
whatever just and proper by the Court,

PAGE 27

Dated: May 1st, 2022

Respectfully Submitted; by:

/s/ Iron Thunderhorse
Iron Thunderhorse
TDCJ #624391
Polunsky Unit
3872· FM· 350 South
Livingston TX 77351
Plaintiff Class Representative
in Prose

Declaration—
      I declare pursuant to 28 U.S.C.
§1746 that the statements made by me
herein are true and correct under the
penalty of perjury as executed on the
1st day of May, 2022.

            /s/ Iron Thunderhorse
            Iron Thunderhorse
            TDCJ # 624391

— END —

PAGE  29

FROM:

Dion Thunderhorse
TDCJ No. 624391
Polunsky Unit
Infirmary 10-03
Livingston, TX 77351

To:

United States District Clerk
United States District Court
P.O. Box 61010
Houston, Texas 77208

United States Courts
Southern District of Texas
F I L E D
MAY 11 2022
Nathan Ochsner, Clerk of Court







FOREVER / USA