Case 4:22-cv-01511   Document 29   Filed on 03/11/24 in TXSD   Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
March 11, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IRON THUNDERHORSE, <br> TDCJ # 00624391, <br><br> Plaintiff, <br><br> VS. <br><br> BRYAN COLLIER, <br><br> Defendant. | § § § § § § § § § § § | CIVIL ACTION NO. 4:22-1511 |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Iron Thunderhorse, an inmate in the Texas Department of Criminal Justice (TDCJ), proceeds *pro se* and *in forma pauperis* in this civil rights case. Because this case is governed by the Prison Litigation Reform Act (PLRA), the Court is required to scrutinize the pleadings and dismiss the complaint in whole or in part if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b). Having reviewed the pleadings as required, the Court will **dismiss** Thunderhorse's retaliation claim under the First Amendment; his claim under the Eighth Amendment regarding inadequate medical care; and his international law claims. Thunderhorse's motion to be appointed lead plaintiff (Dkt. 22) will be **denied**. The Court's reasons are explained below.

By separate order, the Court will order the defendant to answer Thunderhorse's remaining claims.

**I.    BACKGROUND**

Thunderhorse has filed a complaint (Dkt. 1), an amended complaint (Dkt. 7), a more

definite statement (Dkt. 20), and a supporting brief (Dkt. 21). He brings the following claims: retaliation under the First Amendment; inadequate medical care under the Eighth Amendment; unconstitutional conditions of confinement under the Eighth Amendment; deprivation of notice in connection with his restrictive housing assignment in violation of the Due Process Clause of the Fourteenth Amendment; violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (ADA), and the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*; tort and breach of contract under Texas law; and international law violations (Dkt. 1, at 24-27; Dkt. 7; Dkt. 20; Dkt. 21). He names Bryan Collier, the executive director of TDCJ, as the defendant.

Since 2019, Thunderhorse has primarily been assigned to the Jester 3, Stiles, and Polunksy Units (Dkt. 20, at 13-14). He is approximately 80 years old, has visual and physical disabilities, and uses a wheelchair. In response to the Court's questions, he listed multiple medical conditions relevant to his claims, including hypertension since 1985; previous concussions in 1963, 1967, and 1991; dermatitis since 2000; degenerative lumbar spine disease since 2009; diabetes since 2008; advanced degenerative joint disease since 2009; gout since 2017; abdominal hernia since 2017; cataracts since 1992; and blindness and low vision (*id.* at 18-21). As for his disabilities, Thunderhorse listed blindness and low vision; neuropathological disorder; frozen right shoulder; degenerative lumbar spine disease; abdominal hernia; edentulism (toothlessness); gastroesophageal reflux disease; and peripheral neuropathy of extremities (*id*. at 22-25). He claims that TDCJ has not provided adequate medical care or accommodations for his disabilities.

Thunderhorse also claims that he was assigned to "administrative segregation" in 2018 and 2019 because he refused to cut his hair for religious reasons; that he received a bogus disciplinary case in July 2020; and that he was assigned to "restrictive housing" from July 2020 through the filing of his more definite statement in May 2023, despite being "disciplinary free" (*id.* at 12, 14-15). He alleges that he is designated by unnamed officials as "high profile" and "persona non grata" for exercising his rights (*id*. at 12). He claims that TDCJ officials have retaliated against him through bogus disciplinary cases and repeated transfers (*id*. at 16-17; Dkt. 21, at 35-40). He also claims that officials assigned him to restrictive housing improperly and without required notice. Since filing his more definite statement, Thunderhorse informed the Court that he has been released from restrictive housing (Dkt. 28).

As relief for his claims, Thunderhorse seeks a declaration "of violations proven at trial"; compensatory damages of $500 for destroyed property; and punitive damages of $1,000 "to redress ongoing violations of clearly established law and prior agreements" (Dkt. 21, at 59-60; *see* Dkt. 1, at 27 (seeking $15,000)). He also requests injunctive relief from Collier, in particular, "a transfer to [his] domicile/place of birth Connecticut to live out [his] term under constitutionally adequate conditions until [his] death or release" (Dkt. 21, at 60).

## II.  STANDARD OF REVIEW

Because the plaintiff is a prisoner proceeding *in forma pauperis*, the Court is required by the PLRA to screen the case and dismiss the complaint at any time if it determines that the complaint is frivolous, malicious, fails to state a claim upon which relief

may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B). A district court may dismiss a claim as frivolous if it lacks any arguable basis in law or fact. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). A claim lacks an arguable basis in law "if it is based on an indisputably meritless legal theory." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (cleaned up). It lacks an arguable basis in fact "if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Id.* (cleaned up).

A dismissal under § 1915A(b) or § 1915(e)(2)(B) for failure to state a claim is governed by the same standard as a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Newsome v. EEOC,* 301 F.3d 227, 231 (5th Cir. 2002). Under this standard, the Court "construes the complaint liberally in favor of the plaintiff," "takes all facts pleaded in the complaint as true," and considers whether "with every doubt resolved on [the plaintiff's] behalf, the complaint states any valid claim for relief." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (cleaned up). A court may dismiss a case *sua sponte* and without notice to the plaintiff if the plaintiff has pleaded his best case or if the dismissal is without prejudice. *Brown v. Taylor*, 829 F.3d 365, 370 (5th Cir. 2016); *see Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (holding that a court may *sua sponte* dismiss for failure to state a claim "as long as the procedure employed is fair") (cleaned up); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986) (holding that where the pleadings, viewed under the individual circumstances of the case, "demonstrate that the plaintiff has pleaded his best case," dismissal on the pleadings is appropriate if the

pleadings do not adequately state a cause of action).

In reviewing the pleadings, the Court is mindful of the fact that the plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Additionally, regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *Geiger v. Jowers,* 404 F.3d 371, 373 (5th Cir. 2005).

### III. DISCUSSION

The Court addresses Thunderhorse's pending motion before screening his claims for relief.

#### A. Motion to Appoint Lead Plaintiff

Previously, in February 2023, the Court denied Thunderhorse's request for class certification. The Court held that, under Federal Rule of Civil Procedure 23(a), Thunderhorse had not met his burden to show commonality, among other requirements,

because he had not provided detail about the members of the proposed class or identified issues capable of class-wide resolution (Dkt. 15).

Thunderhorse now has filed a motion to be appointed lead plaintiff (Dkt. 22), along with a related declaration (Dkt. 23). He states that he seeks to bring this action on behalf of himself and others similarly situated, in particular, TDCJ inmates who (1) are 55 years old or older; (2) have at least one primary disability; (3) have "contemporaneous, serious[,] chronic medical conditions"; and (4) are assigned to restrictive housing (Dkt. 22, at 4-5). He estimates the proposed class to include between 400 and "a few thousand" inmates (*id.* at 5).[1] He argues that he should be appointed lead plaintiff based on his personal history, experience, and legal skill, pointing out that he has been in TDCJ custody since 1978 and is the only class member from the *Ruiz* litigation who is still alive and in TDCJ custody (Dkt. 22, at 10, 14; *see Ruiz v. Estelle*, 679 F.2d 1115 (5th Cir. 1982) (affirming in part a decree that ordered reforms to conditions of confinement in Texas prison system), *amended in part and vacated in part*, 688 F.2d 266 (5th Cir. 1982)). He presents an expansive history of TDCJ from the 1970s to the present era, discussing the *Ruiz* litigation, the enactment of the ADA, the abolition of solitary confinement in TDCJ, and TDCJ's subsequent use of restrictive housing, among other topics (Dkt. 22, at 6-14).

---

[1] Thunderhorse seeks no relief specific to these other potential class members, other than an injunction ordering Collier to submit a "comprehensive plan" to release "other similarly situated" inmates or place them in nursing facilities outside of TDCJ (Dkt. 1, at 28; *see* Dkt. 7, at 4). In his more definite statement, he appears to request "receivership" for "others similarly situated" (Dkt. 21, at 60).

Thunderhorse's motion to be appointed lead plaintiff is contingent upon class certification. Because no class has been certified, his motion will be **denied**.

To the extent Thunderhorse's motion could be construed as a renewed motion for class certification, the motion also will be **denied**. As stated in the Court's previous order, a plaintiff seeking class certification must meet four threshold requirements under Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation. *Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318, 325 (5th Cir. 2008). Rule 23(a) sets out the "prerequisites" for certification:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and,
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). In addition, the party seeking certification must satisfy the requirements of Rule 23(b)(1), (b)(2), or (b)(3). *BioPay*, 541 F.3d at 325.

Here, Thunderhorse asserts that there are questions of law and fact common to the potential class because the inmates in his proposed class are over 55 years old, have serious medical conditions, and are subject to "systematic and gross deficiencies" in staffing and accommodations (Dkt. 22, at 17-18). His declaration identifies five other inmates, all housed with him in May 2023 at the infirmary of the Polunksy Unit:

1. a 55-year-old inmate with impairments from diabetes and grand mal seizures who is subject to bogus disciplinary cases from officials in order to "justify [TDCJ's] inability and unwillingness to provide compassionate care" (Dkt. 23, at 7-9);

2. an inmate who is at least 60 years old, has a heart condition and related infection, and was placed in "segregation as a . . . gang member without due process" (*id.* at 9-10);

3. a 60-year-old inmate with terminal cancer who had been granted medical release but, months later, had not actually been released (*id.* at 10-11);

4. an inmate of unspecified age who is paraplegic and was transferred out of the Polunksy infirmary to unspecified housing after Thunderhorse assisted him with grievances (*id.* at 11); and,

5. a death row inmate of unspecified age who is severely obese and "24/7 on oxygen" (*id.*).

Thunderhorse states that he presents this list of inmates "to satisfy the requirements of numerosity, commonality, [and] typicality" (*id.* at 7). However, his filing does not provide an age for two listed inmates and does not demonstrate common housing status, instead stating that one inmate was housed based on gang membership, another had been transferred out of the infirmary, and a third had been approved for medical release. Additionally, although he seeks certification of a class of inmates assigned to restrictive housing (Dkt. 22, at 5), these inmates all are housed in the Polunksy infirmary. The record does not reflect whether the Polunksy infirmary is covered by TDCJ's restrictive housing plan, and Thunderhorse does not explain the relationship between the infirmary and the restrictive housing he seeks to challenge. Therefore, his filing describing himself and five other inmates in the Polunksy infirmary does not sufficiently demonstrate that the potential class he outlines has "questions of law or fact common to the class," *see* FED. R. CIV. P.

23(a)(2), nor that the claims are capable of class-wide resolution. *See Yates v. Collier*, 868 F.3d 354, 361 (5th Cir. 2017) (the commonality requirement requires a plaintiff to show "a common contention that must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke") (cleaned up).

Additionally, Thunderhorse has not shown that his claims are typical of the claims of the proposed class, nor that he can provide adequate representation for the class. *See Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002) (the typicality requirement focuses on the similarities between the "legal and remedial theories" of the named plaintiffs and the theories of potential class members) (cleaned up). Although he seeks to certify a class of inmates assigned to restrictive housing, he has informed the Court that he was released from restrictive housing in August 2023 (Dkt. 28, at 2). Therefore, his claims and defenses are no longer representative to those in the class he seeks to certify.

On this record, Thunderhorse has not met his burden to show that Rule 23(a)'s prerequisites are satisfied.[2] His motions for class certification and appointment as lead plaintiff (Dkt. 22) therefore will be **denied**.

---

[2] Thunderhorse's caption also proposes a defendant class including Collier and "all other TDCJ officials, their agents, employees, . .. representatives, and third-party vendors" (Dkt. 22, at 1). However, he pleads no facts that could state a claim against these defendants and, moreover, no facts that could satisfy Rule 23's requirements. *See Harrington*, 563 F.3d at 147 (a court takes all pleaded facts as true and considers whether, with all doubts resolved in favor of the plaintiff, the complaint states any valid claim for relief); FED. R. CIV. P. 23(a) (requiring showing of numerosity, commonality, typicality, and adequate representation).

### B. Claims for Relief

Thunderhorse claims that Collier violated his rights under the ADA, the Constitution, state law, and international law. For the reasons stated below, the Court will dismiss his retaliation claim under the First Amendment, his claim regarding medical care under the Eighth Amendment, and his international law claims.

#### 1. Retaliation

Thunderhorse claims that Collier retaliated against him in violation of the First Amendment to the Constitution. He brings his claim under 42 U.S.C. § 1983, which provides a vehicle for a federal claim against a person "acting under color of state law," such as a prison official, for a constitutional violation. *See Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 180 (5th Cir. 2016). To state a valid claim for retaliation, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Baughman v. Hickman*, 935 F.3d 302, 312 (5th Cir. 2019). A supervisory official such as Collier may be held liable under § 1983 "only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (cleaned up).

In the order for a more definite statement, the Court asked Thunderhorse to explain how Collier personally retaliated against him. In response, Thunderhorse stated that he has been subject to bogus disciplinary cases and repeated transfers, which he attributes to retaliation against him for his complaints (Dkt. 20, at 16-17). However, he does not

identify any personal involvement by Collier in the alleged retaliation, instead alleging that Collier is liable because of his supervisory role:

> Bryan Collier as Executive Director is legally responsible for developing policies including training, supervising[,] and disciplining subordinate employees including the TDCJ grievance system. So, in acquiescing or turning a blind eye to the violations in the complaint, Bryan Collier personally participated in such actions. . . . Moreover, Bryan Collier failed to act where he was put on actual notice by U.S. Mail, and grievance process.

(*id.* at 16).[3] This allegation does not adequately state a claim that Collier affirmatively participated in retaliation against him. *See Porter*, 659 F.3d at 446. To the extent Thunderhorse sues Collier based on his failure to act on grievances, or based solely on his supervisory position, his claim must fail. *See Geiger*, 404 F.3d at 374 (inmate does not have protected interest in having grievances resolved to his satisfaction); *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006) ("[t]here is no vicarious or *respondeat superior* liability of supervisors under section 1983"). Finally, although Thunderhorse alleges that Collier was motivated to retaliate against him based on his criticism of TDCJ in magazines, law journals, and papers (Dkt. 20, at 18), his personal belief is insufficient to allege Collier's intent, which is an essential element of a retaliation claim. *See Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (in inmate must allege more than his personal belief that he is the victim of retaliation); *Woods v. Smith*, 60 F.3d 1161, 1166

---

[3] *See id.* at 16-17 (referring to 12-18 unanswered grievances, "hundreds of pages" of unresolved informal grievances, and "bogus disciplinary charges"); Dkt. 21, at 35 (alleging that he was subjected to retaliatory transfers "a dozen times (2019-2022) after filing grievances and initiating this action," as well as an unspecified bogus disciplinary case resulting in his placement in restrictive housing, but alleging no involvement by Collier)).

(5th Cir. 1995) (an inmate must produce direct evidence of retaliatory motive or allege a chronology of events from which retaliation may plausibly be inferred).

Thunderhorse therefore has not pleaded a claim that Collier personally retaliated against him. He also does not allege that Collier is liable for a policy of retaliation.[4] *See Porter*, 659 F.3d at 446. Therefore, construing the pleadings liberally in the plaintiff's favor, and taking all alleged facts as true, the pleadings fail to state a valid claim of retaliation. *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013); *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009). Thunderhorse's claims under the First Amendment will be **dismissed** pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief can be granted.

### 2. Medical Claims

Thunderhorse alleges in his more definite statement that he has been denied adequate medical care for multiple conditions. To state a claim under the Eighth Amendment, a plaintiff must allege that the defendant exhibited "deliberate indifference" to his serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019); *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006). A plaintiff must show that the defendant was aware of facts from which the inference could be drawn of a substantial risk of serious harm; that the defendant

---

[4] In his more definite statement, in response to the Court's request that he identify any policies relevant to his claims, Thunderhorse identified only policies relevant to his ADA claim, Dkt. 20, at 48 (stating that the policy at issue affected his rights under the ADA to reasonable accommodations at all TDCJ units); *see* Dkt. 16, at 11-12 (Question 8)).

subjectively drew the inference that the risk existed; and that the defendant disregarded the risk. *Cleveland*, 938 F.3d at 676. A defendant's personal involvement is an essential element of a civil rights action, meaning that there must be an affirmative link between the injury and a defendant's conduct. *Delaughter v. Woodall*, 909 F.3d 130, 136-37 (5th Cir. 2018). As stated above, a supervisory official such as Collier may be held liable under § 1983 only if he affirmatively participates in the acts that cause the constitutional deprivation or implements unconstitutional policies that causally result in the constitutional injury. *Porter*, 659 F.3d at 446 (cleaned up). A supervisory liability claim also requires a showing of deliberate indifference by the supervisor. *Westfall v. Luna*, 903 F.3d 534, 552 (5th Cir. 2018); *Porter*, 659 F.3d at 446.

Here, Thunderhorse alleges inadequate medical care for chronic neuropathy, edentulism (toothlessness), involuntary trembling, allergic rhinitis, a cardiovascular disorder, dermatitis, and eye disorders, among other conditions (Dkt. 20, at 26-30).[5] He failed to respond to many of the Court's questions regarding the alleged denial of care, including questions asking him to identify specific denied treatments, to provide the dates of the denials, to name the official who issued the denial, and to explain any reason given for the denial (Dkt. 20, at 26-30; *see* Dkt. 16, at 5-7 (Question 4(c))). He also did not identify the harm to him from each alleged denial of care, despite the Court's question asking him to respond separately for each alleged denial, instead stating that, for all alleged violations,

---

[5] Thunderhorse's recent advisory states that he received a "pre-op evaluation" in September 2023 at a UTMB eye clinic and had a cornea transplant at UTMB on October 2, 2023 (Dkt. 28, at 5).

he was harmed by "ongoing pain, discomfort, bruises from falling out of [his] wheelchair, [and an] ongoing inability to perform tasks efficiently" (Dkt. 20, at 30-31; *see* Dkt. 16, at 6 (Question 4(c)(vii))). Similarly, in response to the Court's question about whether a specific official knew of the risk to him at the time of each denial, Thunderhorse responded that, for all alleged violations, unnamed "security and medical" officials "all knew" about the risk to him due to his "numerous informal resolutions," emergency grievances, and worsening symptoms (Dkt. 20, at 31; *see* Dkt. 16, at 7 (Question 4(c)(x))).

The Court is satisfied that, after filing a complaint, amended complaint, more definite statement, and supporting brief, Thunderhorse has pleaded his best case. *See Brown*, 829 F.3d at 370. Based on the above deficiencies, he fails to plead facts that could show that any official acted with deliberate indifference to his serious medical needs in connection with any specific incident. *See Cleveland*, 938 F.3d at 676. Additionally, he has not alleged that Collier was personally involved in the denial of treatment or otherwise acted with deliberate indifference. *See Porter*, 659 F.3d at 446; *Westfall*, 903 F.3d at 552. Rather, in response to the Court's question about why Collier should be liable for the denied medical care, Thunderhorse stated only that Collier had not replied when Thunderhorse "personally sent [him a] lengthy informal resolution" (Dkt. 20, at 31).

Construing the pleadings liberally in the plaintiff's favor, and taking all alleged facts regarding denied medical care as true, the pleadings fail to state a valid claim for relief against Collier. *Rogers*, 709 F.3d at 407; *Harrington*, 563 F.3d at 147. Thunderhorse's Eighth Amendment claim against Collier for denied medical care therefore will be dismissed under 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief can be

granted.

### 3. International Law Claims

Thunderhorse pleads international law claims under the Universal Declaration of Human Rights; the Convention on the Rights of Persons with Disabilities; and the Convention against Torture. He states that a defendant violates the Universal Declaration of Human Rights "wherever the inherent dignity of all humans to the freedom of peace and justice is guaranteed"; that the Convention of the Rights of Persons with Disabilities requires protection of disabled persons; and that the Convention Against Torture "requires . . . measures to 'prevent torture'" (Dkt. 1, at 27; *see* Dkt. 21, at 48). For each of these three claims, Thunderhorse pleads no facts regarding Collier.

Moreover, Thunderhorse does not demonstrate that he possesses any rights under the cited international instruments that are enforceable in a civil rights action under § 1983. The Universal Declaration of Human rights is a statement of principles that is not self-executing and does not impose obligations enforceable in the federal courts. *Sosa v. Alvarez–Machain,* 542 U.S. 692, 734-35 (2004). The Convention on the Rights of Persons with Disabilities does not create a private right of action in federal court. *See Joe v. Michigan Dep't of Corr.*, No. 4:22-CV-12085, 2022 WL 19934308, at *2 (E.D. Mich. Nov. 2, 2022), *report and recommendation adopted,* No. 22-12085, 2023 WL 3634251 (E.D. Mich. May 24, 2023); *Alejandro v. Quiros*, No. 3:21-CV-00542 (JAM), 2021 WL 5324905, at *7 (D. Conn. Nov. 16, 2021); *Knapp v. Cate*, No. 1:08-CV-01779-BAM PC, 2011 WL 5416342, at *7 & n.4 (E.D. Cal. Nov. 8, 2011). Finally, the Convention Against

Torture is not self-executing. *See Yuen Jin v. Mukasey*, 538 F.3d 143, 159 (2d Cir. 2008); *Auguste v. Ridge,* 395 F.3d 123, 132 n. 7 (3d Cir. 2005).

Because Thunderhorse does not plead a valid claim against Collier for violations of international law, his claim will be dismissed under 28 U.S.C. § 1915A(b).

## IV. CONCLUSION

For the reasons explained above the Court now **ORDERS** as follows:

1. Thunderhorse's motion to be appointed as lead plaintiff or for class certification (Dkt. 22) is **DENIED**.

2. Thunderhorse's claims of retaliation, denial of adequate medical care, and international law violations are **DISMISSED with prejudice** under 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief can be granted.

The Clerk will provide a copy of this order to the plaintiff.

SIGNED at Houston, Texas, on _____March 11_____, 2024.

*George C. Hanks Jr*
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE