United States District Court
Southern District of Texas
**ENTERED**
November 26, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IRON THUNDERHORSE, § <br> TDCJ # 00624391, § <br> § <br> Plaintiff, § <br> § <br> VS. § <br> § <br> BRYAN COLLIER, § <br> § <br> Defendant. § | CIVIL ACTION NO. 4:22-1511 |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Iron Thunderhorse, an inmate in the Texas Department of Criminal Justice–Correctional Institutions Division (TDCJ), proceeds *pro se* and *in forma pauperis* in this civil rights case. Thunderhorse brings multiple claims against Bryan Collier, the executive director of TDCJ. Collier has filed a motion to dismiss (Dkt. 46) some of Thunderhorse's claims, along with an answer (Dkt. 47) to the remaining claims. Thunderhorse responded (Dkt. 49), and Collier replied (Dkt. 54). Having reviewed the pleadings, the motions and briefing, the applicable authorities, and all matters of record, the defendant's motion to dismiss will be **granted** as specified below. The plaintiff's motion for joinder (Dkt. 58) will be **denied**.

**I.    BACKGROUND**

Thunderhorse has filed a complaint (Dkt. 1), an amended complaint (Dkt. 7), a more definite statement (Dkt. 20), and a supporting brief (Dkt. 21). He brings the following claims against Collier: a due-process violation in connection with his restrictive housing assignment; unconstitutional conditions of confinement in violation of the Eighth

1 / 18

Amendment; discrimination, failure to accommodate his disability, and retaliation under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (ADA), and the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* (RA); and tort and breach of contract under Texas law (Dkt. 1, at 24-27; Dkt. 7; Dkt. 20; Dkt. 21).[1]

As stated in the Court's order dated March 11, 2024, Thunderhorse is approximately 80 years old, has visual and physical disabilities, and uses a wheelchair. He claims that TDCJ has not provided adequate accommodations for his disabilities.[2] In his more definite statement, in response to questions posed by the Court, he listed multiple medical conditions relevant to his claims, including hypertension since 1985; previous concussions in 1963, 1967, and 1991; dermatitis since 2000; degenerative lumbar spine disease since 2009; diabetes since 2008; advanced degenerative joint disease since 2009; gout since 2017; abdominal hernia since 2017; cataracts since 1992; and blindness and low vision (Dkt. 20, at 18-21). He also listed multiple disabilities, including blindness and low vision; neuropathological disorder; frozen right shoulder; degenerative lumbar spine disease; abdominal hernia; edentulism (toothlessness); gastroesophageal reflux disease; and peripheral neuropathy of extremities (*id.* at 22-25).

---

[1] The Court previously dismissed Thunderhorse's claims of retaliation under 42 U.S.C. § 1983; denial of adequate medical care under the Eighth Amendment; and international law violations (Dkt. 29).

[2] Thunderhorse has primarily been assigned to the Jester 3, Stiles, and Polunksy Units during the period relevant to this case (Dkt. 20, at 13-14).

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Smith v. Regional Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) (cleaned up). A motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject matter jurisdiction. *Venable v. La. Workers' Comp. Corp.*, 740 F.3d 937, 941 (5th Cir. 2013). The court must take as true the complaint's well-pleaded factual allegations and view them in the light most favorable to the plaintiff. *In re Mirant Corp*, 675 F.3d 530, 533 (5th Cir. 2012).

### B. Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) may be granted if the pleading "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a Rule 12(b)(6) motion, courts generally must accept the factual allegations contained in the complaint as true. *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009). Federal pleading rules require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting FED. R. CIV. P. 8(a)(2)). The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *see Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012). The pleadings also must claim that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S.

319, 327 (1989); *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). Under this standard, the court "construes the complaint liberally in favor of the plaintiff," "takes all facts pleaded in the complaint as true," and considers whether "with every doubt resolved on [the plaintiff's] behalf, the complaint states any valid claim for relief." *Harrington*, 563 F.3d at 147 (cleaned up).

The court's review under Rule 12(b)(6) is limited to "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). *See Walch v. Adjutant General's Dep't of Tex.*, 533 F.3d 289, 294 (5th Cir. 2008) (on a Rule 12(b)(6) motion, documents attached to the briefing may be considered by the court if the documents are sufficiently referenced in the complaint and no party questions their authenticity (citing 5B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004))). The Court may also rely on judicially noticed facts. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

### C. *Pro Se* Pleadings

"Pleadings must be construed so as to do justice." FED. R. CIV. P. 8(e). In reviewing the pleadings, the Court is mindful of the fact that the plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). Even under this lenient standard, a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation

of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III.   DISCUSSION

The defendant seeks dismissal under Rule 12 of most of Thunderhorse's claims. Thunderhorse opposes the motion and, in his response, makes several requests for relief. His motion for an evidentiary hearing (Dkt. 49, at 4-5) is denied because this motion under Rule 12 is decided on the pleadings alone. His motion in the alternative to convert the current motion to a motion for summary judgment under Rule 12(d) (*id.* at 5) is denied because the Court's rulings below do not rely on matters outside of the pleadings. His request for sanctions (*id.* at 9) against the defendant's counsel is denied under Rule 11(c)(2) because it was not made separately and additionally because the plaintiff does not demonstrate that counsel's filings violated Rule 11(b). *See Tejero v. Portfolio Recovery Assocs., L.L.C.*, 955 F.3d 453, 459 (5th Cir. 2020) (discussing standards of Rule 11(b)).

### A.   Civil Rights Claims

Thunderhorse brings a due-process claim, which arises under the Fourteenth Amendment, and a conditions-of-confinement claim under the Eighth Amendment. Section 1983, 42 U.S.C. § 1983, provides a vehicle for a claim against a person acting "under color of state law," such as a prison official, for a constitutional violation. *See Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 180 (5th Cir. 2016).

### 1. Official Capacity Claims for Monetary Damages

A claim against an official employed by TDCJ in his or her official capacity is a claim against the agency, and thus a claim against the State of Texas. *See Mayfield v. Tex. Dep't of Crim. Justice*, 529 F.3d 599, 604 (5th Cir. 2008). Because the Eleventh Amendment protects the states' sovereign immunity, federal courts lack jurisdiction over suits against a state for money damages unless the state has waived its immunity or Congress has clearly abrogated that immunity. *NiGen Biotech, L.L.C., v. Paxton*, 804 F.3d 389, 393-94 (5th Cir. 2015); *Moore v. La. Bd. of Elem. and Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). Texas has not waived its Eleventh Amendment immunity, and Congress did not abrogate that immunity when enacting 42 U.S.C. § 1983. *NiGen*, 804 F.3d at 394.

To the extent Thunderhorse sues Collier in his official capacity, Collier is entitled to immunity under the Eleventh Amendment from claims for monetary damages. The defendant's motion to dismiss all official capacity claims for damages therefore will be granted.

### 2. Qualified Immunity

Collier asserts qualified immunity for claims brought against him in his individual capacity. Determination of qualified immunity requires a bifurcated analysis: first, the court must decide "whether the undisputed facts and the disputed facts, accepting the plaintiffs' version of the disputed facts as true, constitute a violation of a constitutional right"; and second, the court must determine "whether the defendant's conduct was objectively reasonable in light of clearly established law." *Carroll v. Ellington*, 800 F.3d

154, 169 (5th Cir. 2015) (cleaned up). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Pratt*, 822 F.3d at 181 (cleaned up). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) (cleaned up). A reviewing court may address the two prongs of the qualified immunity analysis in any sequence, depending on the circumstances of the particular case at hand. *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead specific facts that "defeat a qualified immunity defense" with the "minimal specificity that would satisfy *Twombly* and *Iqbal*." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020).

### 3. Due Process Claim

Thunderhorse claims that Collier denied his due-process rights when he did not provide adequate notice of Thunderhorse's assignment to restrictive housing. *See* Dkt. 1, at 25; Dkt. 7; Dkt. 20, at 33-35. Under the Due Process Clause, an inmate has a liberty interest in freedom from restraint that imposes an "atypical, significant hardship" on the inmate and from punishment that extends the length or duration of confinement. *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see Wilkerson v. Goodwin*, 774 F.3d 845, 852 (5th Cir. 2014). "A prison inmate does not have a protectable liberty or property interest in his custodial classification." *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992). In some cases, however, "extreme conditions of confinement . . . can involve such atypical and extraordinary circumstances that such confinement can implicate a liberty interest." *Hernandez v. Abbott*, No. 9:20-CV-196, 2021 WL 11721407, at *7 (E.D. Tex. July 28,

2021) (collecting cases), *report and recommendation adopted,* No. 9:20-CV-196, 2023 WL 6060346 (E.D. Tex. Sept. 18, 2023). The Fifth Circuit has determined that segregated confinement up to two and one-half years does not give rise to a liberty interest. *Wilkerson*, 774 F.3d at 855.

Here, Thunderhorse states that TDCJ officials placed him in restrictive housing in May 2020 based on a disciplinary conviction and without adequate notice (Dkt. 20, at 34). He was released from restrictive housing on August 31, 2023 (Dkt. 28, at 2). He alleges that officials failed to provide him with notice of the "bogus" disciplinary case and that he was not permitted to call witnesses or present evidence at the hearing (Dkt. 20, at 33-35). He claims that Collier should be held liable for the alleged violation of his rights because he comes to the Polunsky Unit "regularly to appear on 106.5 FM," because he "gets briefings," and because Thunderhorse addressed grievances and informal resolutions to him (Dkt. 20, at 35; *see id*. at 35 (stating that "too many people" were responsible for the denied notice and he does not know their names)).

Collier seeks dismissal of the due-process claim because Thunderhorse does not plead necessary facts for a claim against a supervisory official. A supervisory official such as Collier may be held liable under § 1983 "only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (cleaned up). A supervisory liability claim based on the acts of subordinate employees also requires a showing of deliberate indifference by the supervisor. *Westfall v. Luna*, 903 F.3d 534, 552 (5th Cir. 2018); *Porter*, 659 F.3d at 446.

Here, Thunderhorse alleges that Collier is liable for the violation of his rights because Collier regularly comes to the Polunksy Unit, receives briefings, and was the addressee on Thunderhorse's grievances and requests for informal resolution. These facts are insufficient to state a claim that Collier affirmatively participated in the alleged violations of his rights in connection with his disciplinary hearing. *See Porter*, 659 F.3d at 446.[3] To the extent Thunderhorse sues Collier based solely on his supervisory position, § 1983 does not permit *respondent superior* liability. *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006) ("[t]here is no vicarious or *respondeat superior* liability of supervisors under section 1983"). Additionally, to the extent he bases his claim against Collier on his denied grievances, his claim fails because an inmate "does not have a federally protected interest in having [his] grievances resolved to his satisfaction." *See Geiger*, 404 F.3d at 374.

Under the authority cited above, Collier could be liable for a due-process violation if he implemented an unconstitutional policy that caused Thunderhorse injury. However, Thunderhorse has not adequately alleged that Collier implemented an unconstitutional policy. To the contrary, he alleges that TDCJ's restrictive housing plan *required* adequate notice of his placement but that he received no such notice (Dkt. 20, at 35). Therefore, any claim against Collier based on policy must be dismissed.

Thunderhorse fails to state a due-process claim against Collier on which relief can be granted. Because he has not pleaded specific facts that are sufficient to defeat Collier's

---

[3] Despite the defendant's motion raising this issue as a ground for dismissal, Thunderhorse's response provides no further facts regarding Collier's personal participation in the disciplinary proceedings. *See, e.g.*, Dkt. 49, at 3, 8, & 22.

qualified immunity defense, *see Arnold*, 979 F.3d at 267, the motion to dismiss the due-process claim will be granted.

### 4. Conditions Claim

Thunderhorse alleges that Collier has subjected him to cruel and unusual punishment, in violation of the Eighth Amendment, because the "totality of circumstances" have produced "physical torture" over 42 years which "equates to 'lingering death'" (Dkt. 1, at 25). He claims that, while in restrictive housing, he did not have access to showers, baths, or recreation, and that he only left his room for searches or to receive medical care (Dkt. 20, at 15).

To state a conditions-of-confinement claim under the Eighth Amendment, a plaintiff must allege conditions that pose a "substantial risk of serious harm," as well as "deliberate indifference" by the defendant. *Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015); *see Taylor v. Riojas*, 592 U.S. 7 (2020). A prison official acts with deliberate indifference "when he knows of and disregards an excessive risk to inmate health or safety." *Hinojosa*, 807 F.3d at 665. The official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (cleaned up). Deliberate indifference is an "extremely high standard." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Allegations of negligence do not state a claim under 42 U.S.C. § 1983. *Hinojosa*, 807 F.3d at 665. As stated above, a supervisory official such as Collier may be held liable under § 1983 only if he "affirmatively participates" in the constitutional deprivation or

implements an unconstitutional policy that causes the deprivation, and a plaintiff must plead facts showing deliberate indifference by the supervisor. *Porter*, 659 F.3d at 446.

Although Thunderhorse argues that Collier should be liable based on his supervisory capacity or his failure to train his subordinate employees, he pleads no facts that could demonstrate either Collier's personal involvement in the conditions at issue or his deliberate indifference (*see*, *e.g.*, Dkt. 21, at 10; Dkt. 49, at 3, 8-9). *See Westfall*, 903 F.3d at 552; *Porter*, 659 F.3d at 446.  Additionally, Thunderhorse has not adequately identified an unconstitutional TDCJ policy.  He does not allege a TDCJ-wide violation, but rather that violations occurred at the Polunsky Unit although other TDCJ units had accommodated his needs (Dkt. 20, at 38-40). Despite the Court's specific questions, he pleads no additional facts that could support a conditions-of-confinement claim against Collier based on policy (*id.* at 46-48).

Because Thunderhorse has not pleaded specific facts to defeat Collier's qualified immunity defense, *see Arnold*, 979 F.3d at 267, his Eighth Amendment claim will be dismissed.

### B. Disability Claims

Thunderhorse brings claims against Collier under the ADA and RA for discrimination, retaliation, and failure to accommodate his disabilities.  Collier moves to dismiss the discrimination and retaliation claims.

### 1. Discrimination

Thunderhorse claims that TDCJ personnel discriminated against him because of his disability (Dkt. 20, at 44-45).  Collier seeks dismissal of this claim to the extent the claim is brought against him in his individual capacity.

To state a claim for discrimination under ADA, a plaintiff must allege: "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability."  *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011).  Because a discrimination claim under § 504 of the RA closely tracks the language of the ADA's discrimination provision, the Fifth Circuit analyzes the claims together.  *Est. of A.R. v. Muzyka*, 543 F. App'x 363, 364 (5th Cir. 2013) (citing *Hainze v. Richards,* 207 F.3d 795, 799 (5th Cir. 2000)).

The ADA and RA do not permit claims against a defendant in his or her individual capacity.  Rather, the ADA prevents a "public entity," including a state prison, from discriminating against a qualified individual based on that individual's disability.  42 U.S.C. § 12131(1) & § 12132; *United States v. Georgia*, 546 U.S. 151, 154 (2006) (the ADA defines "public entity" to include any department or agency of a state, including state prisons).  Individual defendants are not liable under the statute.[4]  The RA also does not

---

[4] *See Garcia v. State Univ. of N.Y. Health Scis. Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001) (individual defendants are not personally liable for discrimination under Title II of the ADA); *Shaw v. TDCJ-CID*, 540 F. Supp. 2d 834, 838 (S.D. Tex. 2008) (ADA does not permit suit for monetary damages or injunctive relief against individual defendants in their personal capacities) (citing, *inter alia*, *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n. 8 (8th Cir. 1999)).

provide for individual liability. *Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999); *see Garcia*, 280 F.3d at 107.

Collier's motion to dismiss Thunderhorse's discrimination claim under the ADA and RA will be granted to the extent the claim is brought against Collier in his individual capacity. Collier has not moved for dismissal of Thunderhorse's discrimination claim against him in his official capacity, and the Court does not reach the issue.

### 2. Retaliation

Thunderhorse brings a retaliation claim under the ADA, which prohibits retaliation against a plaintiff based on the plaintiff's opposition to acts that violate the statute. A plaintiff bringing a retaliation claim must show that he engaged in activity protected by the ADA, that he suffered an adverse action, and that a causal connection exists between the protected activity and the adverse action. 42 U.S.C. § 12203(a); *see Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020); *Norman v. Tex. Dep't of Crim. Justice*, 293 F. App'x 285, 288 (5th Cir. 2008).

Collier seeks dismissal of the retaliation claim based on Thunderhorse's pleadings. Although Thunderhorse's complaint refers to the relevant statute, it pleads no specific facts that could show that Collier acted as a form of retaliation. *See* Dkt. 1, at 26 (alleging without elaboration that the "actions of defendants who have repeatedly submitted him to reprisals and retaliation" violate the ADA). Thunderhorse's memorandum accompanying his more definite statement also recites the statute but again pleads no specific facts, stating only that he has "hundreds of pages of medical records, studies of experts, TDCJ policies to meet his burden of proof" (Dkt. 21, at 47-48). His response to Collier's motion to dismiss

also refers to no specific facts supporting a retaliation claim.

Thunderhorse's pleadings and briefing are insufficient to state a retaliation claim against Collier under the ADA. *See Iqbal*, 556 U.S. at 677-78. Therefore, the claim will be dismissed.

### C. State Law Claims

Thunderhorse brings claims against Collier for tort and breach of contract under Texas law. The Court exercises supplemental jurisdiction over these claims. *See* 28 U.S.C. § 1367(a); FED. R. CIV. P. 18(a).

#### 1. Tort

Thunderhorse alleges that Collier is liable to him under tort law for the deliberate destruction of his property. He brings his claims under the Texas Tort Claims Act, TEX. CIVIL PRAC. & REM. CODE § 101.001 *et seq.* The statute "waives governmental immunity in some respects, and also discourages or prevents recovery against government employees." *Martin v. Petty*, 699 F. Supp. 3d 547, 561 (S.D. Tex. 2023) (cleaned up) (citing *Franka v. Velasquez*, 332 S.W.3d 367, 384 (Tex. 2011)).

Thunderhorse describes the destroyed property as a lamp, typewriter, hotpot, and other items with a total value of $450-500 (Dkt. 20, at 45). He states that the property was destroyed in 2020 and 2021 by Effy Venson, a correctional officer at the Polunsky Unit (*id.*). He alleges that Collier is liable for the property "because at other TDCJ units these items would be replaced and have been in the past at other units"; because "Texas tort law allows it"; and because Collier "let Polunsky Unit operate as its own entity" by

"acquiescing to wrongs by officers/inmates and giving carte blanche deference" (*id.* at 45-46).

Collier moves for dismissal under § 101.106(f), which requires a plaintiff to elect to sue either the governmental unit or the employee in his individual capacity. A defendant seeking dismissal under § 101.106(f) must show (1) that the officer was an employee of a government unit; (2) that the suit is based on conduct within the general scope of the officer's employment; and (3) that the suit could have been brought against the governmental unit. *Martin*, 699 F. Supp. 3d at 562 (citing *Pardo v. Iglesias*, 672 S.W.3d 428, 432-33 (Tex. App.–Hou. [14th Dist.] 2023, no pet.)). The statute requires dismissal of a suit against a government employee on the employee's motion, if the suit could have been brought against the governmental unit, "unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed." TEX. CIV. PRAC. & REM. CODE § 101.006(f).

Here, Thunderhorse does not dispute Collier's arguments that he is a government employee, that his alleged conduct was within the scope of his employment, or that the suit could have been brought against TDCJ. Texas courts have found that confiscation of an inmate's property, whether negligent or intentional, could have been brought against TDCJ for purposes of 101.106(f). *See Lopez v. Serna*, 414 S.W.3d 890, 894-95 (Tex. App.–San Antonio 2013, no pet.) (holding that an intentional tort claim against could have been brought against TDCJ); *see also Pardo*, 672 S.W.3d at 435 (claims against police officers for assault and negligence could have been brought against the City of Houston). Collier moved for dismissal on this ground more than 30 days ago, and Thunderhorse has not filed

15 / 18

an amended pleading. Therefore, his tort claim against Collier will be dismissed under §101.106(f).

### 2. Contract

Thunderhorse alleges that Collier is liable for breach of contract because he has breached the consent decree in *Ruiz v. Estelle*, Civil Action No. 4:78-0987 (S.D. Tex.). *See* Dkt. 1, at 27; Dkt. 21, at 52. A breach of contract claim in Texas requires a showing of (1) a valid contract between the plaintiff and defendant; (2) the plaintiff tendered performance or was excused from doing so; (3) the defendant breached the terms of the contract; and (4) the plaintiff sustained damages as a result of the breach. *Atrium Med. Ctr., LP v. Houston Red C LLC*, 546 S.W.3d 305, 311 (Tex. App.–Hou. [14th Dist.] 2017), *aff'd*, 595 S.W.3d 188 (Tex. 2020).

The *Ruiz* court terminated the consent decree in 2002. *See Ruiz v. Estelle*, Civil Action No. 4:78-0987 (S.D. Tex.) (Dkt. 9015) (final judgment and termination of jurisdiction entered on June 17, 2002).[5] Collier seeks dismissal of this claim based on the consent decree's termination. Thunderhorse offers no specific argument in response and does not address any elements of a breach-of-contract claim. *See* Dkt. 49, at 3. Given the termination of jurisdiction by the *Ruiz* court in 2002, among multiple other deficiencies in Thunderhorse's pleading of the claim, Collier's motion to dismiss will be granted.

### D. Joinder

Thunderhorse moves the court for joinder of two TDCJ officials: Tim Fitzpatrick,

---

[5] The Court takes judicial notice of this public record under Federal Rule of Evidence 201. *See Funk*, 631 F.3d at 783.

16 / 18

director of TDCJ's department of classification and records; and Ronald Ivey, senior warden at the Polunsky Unit.  He brings his motion under Rule 19(a)(1)(A).  *See* Dkt. 58.  Collier has not responded.

Rule 19(a)(1)(A) pertains to joinder of a required party.  The rule provides: "A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if . . . in that person's absence, the court cannot accord complete relief among existing parties." *See PHH Mortg. Corp. v. Old Republic Nat'l Title Ins. Co.*, 80 F.4th 555, 561 (5th Cir. 2023).  A "required party" is one in whose absence "the court cannot afford complete relief among the existing parties or who claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may have a negative impact on the absent and/or the existing parties as set forth in the Rule." *HSBC Bank USA, Nat. Ass'n v. Johnson*, No. CIV.A. H-15-0277, 2015 WL 1540262, at *3 (S.D. Tex. Apr. 7, 2015) (cleaned up) (quoting *HS Resources, Inc. v. Wingate,* 327 F.3d 432, 439 (5th Cir. 2003)).

Thunderhorse alleges that Fitzpatrick participated in or was responsible for decisions on the custody or housing assignments in the time since he filed this case (Dkt. 58, at 2). He alleges that Ivey has knowledge of the facts relevant to Thunderhorse's claims, including his health, safety, and welfare (*id.* at 3).  He states that joinder is necessary under Rule 19(a)(1)(A) based on facts already pleaded to avoid multiple future suits and to avoid partial, inadequate relief (*id.* at 4).

To the extent Thunderhorse seeks to join Fitzpatrick or Ivey for purposes of his discrimination or accommodation claims under the ADA or RA, he provides no basis to

conclude on this record that the absence of either party would impede the Court's ability to accord complete relief. *See PHH Mortg. Corp.*, 80 F.4th at 561. All of Thunderhorse's other claims have been dismissed, and his statements in his motion for joinder provide no indication that the addition of either Fitzpatrick or Ivey as a party would alter the Court's conclusion that he has failed to state a claim upon which relief can be granted. Therefore, Thunderhorse's motion for joinder will be denied.

## IV.   CONCLUSION

For the reasons stated above the Court now **ORDERS** as follows:

1. Collier's motion to dismiss (Dkt. 46) is **GRANTED** insofar as the following claims are dismissed: all claims under 42 U.S.C. § 1983; discrimination under the ADA and RA to the extent brought against Collier in his individual capacity; retaliation under the ADA; tort; and breach of contract.

2. Thunderhorse's motion for joinder (Dkt. 58) is **DENIED**.

3. Thunderhorse's remaining claims in this action are his claims for discrimination and accommodation under the ADA and RA brought against Collier in his official capacity.

4. The stay of litigation deadlines previously entered by this Court is now **LIFTED**. Collier's dispositive motion regarding Thunderhorse's remaining claims is due on or before **January 31, 2025**. Thunderhorse's response will be due within 30 days of the date that Collier's motion is mailed to him.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on ___November 26_____, 2024.

*[signature]*
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE