United States District Court
Southern District of Texas
**ENTERED**
August 28, 2025
Nathan Ochsner, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| IRON THUNDERHORSE, | § | |
| TDCJ # 00624391, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:22-1511 |
| | § | |
| BRYAN COLLIER, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Iron Thunderhorse, an inmate in the Texas Department of Criminal Justice–Correctional Institutions Division (TDCJ), proceeds *pro se* and *in forma pauperis* in this civil rights case. The defendant filed a motion for summary judgment (Dkt. 82), Thunderhorse responded (Dkt. 91; Dkt. 92), and Collier filed a reply (Dkt. 95). Thunderhorse then filed additional responses, appendices, and briefing (Dkt. 96-1; Dkt. 97; Dkt. 98; Dkt. 99; Dkt. 100). The motion is ripe for decision. Having reviewed the pleadings, the motions and briefing, the applicable authorities, and all matters of record, summary judgment will be **granted** for Collier. All of Thunderhorse's claims will be **dismissed with prejudice** pursuant to Rule 56, 28 U.S.C. § 1915(e)(2)(B), and 28 U.S.C. § 1915A(b). The Court's reasons are explained below.

Thunderhorse's motion to exceed the page limit (Dkt. 96), which cites his disabilities and the length of the defendant's briefing, among other factors, will be **granted**.

## I.    BACKGROUND

### A.    Procedural Background

Thunderhorse filed this case on May 11, 2022. He submitted a complaint (Dkt.1) and an amended complaint on the Court's form (Dkt. 7), bringing multiple, broad claims pertaining to conditions in TDCJ, medical care, his property, and his disabilities. Because the complaint raised numerous factual allegations and invoked multiple legal bases for his claims, the Court entered an order for a more definite statement with detailed questions to identify Thunderhorse's specific claims and the supporting facts for each (Dkt. 16). Thunderhorse filed a more definite statement and an accompanying brief (Dkt. 20; Dkt. 21). Bryan Collier, the executive director of the Texas Department of Criminal Justice, is the sole defendant.

On November 26, 2024, on Collier's motion, the Court dismissed multiple claims, including all civil rights claims under 42 U.S.C. § 1983 (Dkt. 62). The only remaining claims in this litigation are Thunderhorse's claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (ADA), and Rehabilitation Act, 29 U.S.C. § 701 *et seq.* (RA) for discrimination and failure to accommodate his disabilities.[1]

Thunderhorse then filed a proposed amended and supplemental complaint, a motion for leave to amend or supplement his pleadings, and a supporting brief. Relying mostly on events after May 2022, when he filed this suit, he sought to add claims against Collier and

---

[1]    Collier's motion to dismiss (Dkt. 46) did not seek dismissal of the plaintiff's claims against him in his official capacity under the ADA or RA.

six new defendants pertaining to his medical conditions, medical treatment, TDCJ's nutritional offerings, and conditions of his confinement. On April 25, 2025, the Court denied leave to amend or supplement the pleadings (Dkt. 94).

Collier's motion for summary judgment is pending. The motion is titled a motion for partial summary judgment and seeks dismissal of all but three claims based on the administrative exhaustion requirement or the elements of the plaintiff's claims under the ADA and RA (Dkt. 82, at 5). However, the motion and reply also seek dismissal of the remaining claims because the relief sought by Thunderhorse is unavailable through this lawsuit (*id*. at 26-29; *see* Dkt. 95 at 9-10). Therefore, the Court construes the motion as seeking summary judgment on all claims.

Thunderhorse's multiple filings responding to the motion, which include responses, appendices, exhibits, and briefing, total over 1300 pages. *See* Dkt. 96-1; Dkt. 96-2; Dkt. 97; Dkt. 98; Dkt. 99; Dkt. 100.

### B.   **Factual Background**

As stated in the Court's prior orders, Thunderhorse is over 80 years old, has visual and physical disabilities, and uses a wheelchair. He was admitted to TDCJ most recently in 2015 (Dkt. 20, at 10). In his more definite statement, he listed multiple medical conditions relevant to his claims, including hypertension since 1985; previous concussions in 1963, 1967, and 1991; dermatitis since 2000; degenerative lumbar spine disease since 2009; diabetes since 2008; advanced degenerative joint disease since 2009; gout since 2017; abdominal hernia since 2017; cataracts since 1992; and blindness and low vision (*id*. at 18-21). He also listed multiple disabilities, including blindness; neuropathological

disorder; frozen right shoulder; degenerative lumbar spine disease; abdominal hernia; edentulism (toothlessness); gastroesophageal reflux disease; and peripheral neuropathy of extremities (*id*. at 22-25).

Collier's motion construes Thunderhorse's pleadings as bringing five discrimination claims and nine accommodation claims. The relevant facts are discussed in Sections III(B) and III(C) below, in the context of each specific claim. As relief for his claims, Thunderhorse seeks declaratory, injunctive, and monetary relief. (Dkt. 1, at 27-28; Dkt. 7, at 4; Dkt. 21, at 59-60).

Collier's motion maintains that all of the plaintiff's remaining claims in this lawsuit pertain to conditions at the Polunsky Unit, where the plaintiff is currently assigned (Dkt. 82, at 5 (citing Dkt. 82-2 at 9 (plaintiff's deposition testimony)). Thunderhorse's response does not contest this statement. The parties agree that the plaintiff was placed in restrictive housing in July 2020 based on a disciplinary conviction, and that he was released from restrictive housing in October 2023, while this suit was pending (*see* Dkt. 20, at 14-15; Dkt. 28).

## II.    STANDARDS OF REVIEW

### A.    28 U.S.C. § 1915A(b) and § 1915(e)

Because the plaintiff is a prisoner proceeding *in forma pauperis*, the Court is required by the Prisoner Litigation Reform Act (PLRA) to dismiss the complaint at any time if it determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B). A district court may dismiss a

claim as frivolous if it lacks any arguable basis in law or fact. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). A claim lacks an arguable basis in law "if it is based on an indisputably meritless legal theory." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (cleaned up). It lacks an arguable basis in fact "if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Id.* (cleaned up).

A dismissal under § 1915A(b) or § 1915(e)(2)(B) for failure to state a claim is governed by the same standard as a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Newsome v. EEOC,* 301 F.3d 227, 231 (5th Cir. 2002). Under this standard, a court "construes the complaint liberally in favor of the plaintiff," "takes all facts pleaded in the complaint as true," and considers whether "with every doubt resolved on [the plaintiff's] behalf, the complaint states any valid claim for relief." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (cleaned up). A court may dismiss a case *sua sponte* and without notice to the plaintiff if the plaintiff has pleaded his best case or if the dismissal is without prejudice. *Brown v. Taylor*, 829 F.3d 365, 370 (5th Cir. 2016); *see Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (holding that a court may *sua sponte* dismiss for failure to state a claim "as long as the procedure employed is fair") (cleaned up); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986) (holding that where the pleadings, viewed under the individual circumstances of the case, "demonstrate that the plaintiff has pleaded his best case," dismissal on the pleadings is appropriate if the pleadings do not adequately state a cause of action).

### B.     <u>Summary Judgment</u>

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id.* "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.* The nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (cleaned up).

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (cleaned up). A plaintiff's statements may be sufficient to demonstrate a genuine issue of material fact. *See Bourne v. Gunnels*, 921 F.3d 484, 492-93 (5th Cir. 2019). However, the non-movant cannot avoid summary judgment simply by presenting "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes Cty.*, 678 F.3d 344, 348 (5th Cir. 2012) (cleaned up); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075

(5th Cir. 1994) (en banc).  Rather, "[s]elf-serving affidavits and declarations, like all summary judgment evidence, must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 161 (5th Cir. 2021) (cleaned up) (citing FED. R. CIV. P. 56(c)(4)).

Finally, Rule 56 does not impose upon a court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.  Evidence not referred to in the response to the motion for summary judgment is not properly before the court, even if it exists in the summary judgment record.  *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 & n.9 (5th Cir. 2016); *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

### C.     *Pro Se* Filings

In reviewing the pleadings, the Court is mindful of the fact that the plaintiff proceeds *pro se*.  Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid

legal theory.  *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

Although the plaintiff is proceeding *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion.  *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).  Even a *pro se* plaintiff must specifically refer to evidence in the summary judgment record in order to place that evidence properly before the court. *Outley*, 840 F.3d at 217 & n.9; *see E.E.O.C. v. Simbaki, Ltd*., 767 F.3d 475, 484 (5th Cir. 2014) ("Despite our general willingness to construe pro se filings liberally, we still require *pro se* parties to fundamentally abide by the rules that govern the federal courts.  *Pro se* litigants must properly . . . present summary judgment evidence") (cleaned up).

## III.  <u>DISCUSSION</u>

Thunderhorse claims that Collier violated the ADA and RA because he (1) discriminated based on the plaintiff's disabilities and (2) failed to provide reasonable accommodations for his disabilities and limitations.  Collier moves for summary judgment and seeks dismissal of all claims based on three primary grounds: (1) for multiple claims, the plaintiff failed to exhaust his administrative remedies; (2) for multiple claims, the plaintiff fails to demonstrate a genuine issue of material fact on the elements of an discrimination or accommodation claim; and (3) for all claims, the relief sought by the plaintiff is not available.[2]  The Court addresses each in turn.

---

[2]    Collier also moves for summary judgment on any claims Thunderhorse brings under a state disability statute, TEX. HUM. RES. CODE § 121.003 (Dk. 82, at 17-18).  Because Thunderhorse's

A.    <u>**Exhaustion**</u>

Under the PLRA, a prisoner must exhaust available administrative remedies before bringing under any federal law, including the ADA and RA.  *See* 42 U.S.C. § 1997e(a); *Valentine v. Collier*, 978 F.3d 154, 165 (5th Cir. 2020); *Buchanan v. Harris*, No. 23-20128, 2024 WL 1927651, at *3 (5th Cir. May 2, 2024).  The grievance process must be completed before a federal complaint is filed, and "[i]t is irrelevant whether exhaustion is achieved during the federal proceeding." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court."  *Jones v. Bock*, 549 U.S. 199, 204 (2007).

The exhaustion requirement is mandatory and strictly enforced.  *Huskey v. Jones*, 45 F.4th 827, 831 (5th Cir. 2022); *Dillon*, 596 F.3d at 268. The PLRA does not allow a district court to make a "special circumstances" exception to the exhaustion provision, so as to permit a prisoner "to pursue litigation even when they have failed to exhaust available administrative remedies."  *Ross v. Blake*, 578 U.S. 632, 635 (2016); *see Gonzalez*, 702 F.3d at 788 ("District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint").  Rather, the only exception is "that statute's built-in exception to the exhaustion requirement: A prisoner need not exhaust remedies if they are not 'available.'"  *Ross*, 578 U.S. at 636; *Brantner v. Freestone*

---

response acknowledges that he did not plead this claim (Dkt. 91, at 41), it is not before the Court. In any event, the claim would fail because prisons do not qualify as public facilities under the statute. *See Beeman v. Livingston*, 468 S.W.3d 534, 543 (Tex. 2015).

*Cty. Sheriff's Office*, 776 F. App'x 829, 833 (5th Cir. 2019). Although grievance procedures are "unavailable to an inmate" when prison staff mislead the inmate regarding the grievance process and cause the inmate to fail to exhaust the process, an inmate's "ignorance of the grievance procedures, without more, is no basis to deem them unavailable." *Davis v. Fernandez*, 798 F.3d 290, 295 (5th Cir. 2015) (cleaned up).

When an inmate's grievance is against an individual prison officer, "the reviewing officials can ordinarily expect details regarding who was involved and when the incident occurred, or at least other available information about the incident that would permit an investigation of the matter." *Gray v. White*, 18 F.4th 463, 469 (5th Cir. 2021) (cleaned up). A claim raised for the first time in a Step 2 appeal is not properly exhausted under the PLRA, which requires an inmate to comply with prison procedural rules and deadlines. *See Woodford v. Ngo,* 548 U.S. 81, 92-93 (2006); *Johnson v. Johnson,* 385 F.3d 503, 515 (5th Cir. 2004) (TDCJ rules require exhaustion at both stages of grievance process); *Randle v. Woods*, 299 F. App'x 466, 467 (5th Cir. 2008) (because Randle did not raise the claim at issue until Step 2 of the process, he failed to meet the exhaustion requirement).

An inmate may demonstrate a genuine issue of material fact regarding exhaustion by providing a declaration with specific facts that are explicit and clear, such as the date of submission and the complaint in the grievance. *Favela v. Collier*, 91 F.4th 1210, 1213-15 (5th Cir. 2024) (reversing summary judgment on exhaustion grounds because the plaintiff's declaration provided specific facts about his initial grievance and appeal). However, when a declaration is conclusory, vague, or not based on personal knowledge, it is "fatally self-serving" and insufficient to defeat summary judgment. *Id.* at 1214 (cleaned up).

In this case, Collier's motion argues that Thunderhorse failed to exhaust many of his claims (Dkt. 82, at 18-26; *see* Dkt. 82, at 20-23 (chart with citations to record); Dkt. 82-1 (grievance records from March 1, 2020, to June 30, 2023); Dkt. 82-1, at 2 (business records affidavit)).    Thunderhorse's summary judgment response does not address exhaustion, although it briefly refers to separate filings (Dkt. 91, at 119 (incorporating by reference his "arguments, evidence, and showing . . . in a separate but inclusive memorandum")); *see* Dkt. 96-1 (appendix contains argument regarding exhaustion); Dkt. 100 (supplemental memorandum regarding exhaustion); s*ee also* Dkt. 97 (296-page appendix with some grievance records); Dkt. 99, at 107-33 (grievance records)).

As Collier argues in his reply (Dkt. 95, at 8-9), Thunderhorse's filings make general arguments regarding availability or other topics relevant to the exhaustion inquiry, but do not address specific grievances or issues identified by the defendant as dispositive of his claims.    *See*, *e.g.*, Dkt. 96-1, at 15 (arguing without specific reference that the plaintiff received "numerous" grievance responses that were "impossible to unravel" because they were "folded over" and taped, and thus that "many" grievances listed by in the defendant's motion were "irreparably damaged beyond repair"); *id*. at 17-18 (arguing that the 15-day period for an appeal expired on certain unspecified grievances before the plaintiff received the response); Dkt. 100, at 11 (referring to the defendant's chart and stating that it "utilizes the misleading and mistaken notion that every various element of [a] claim must be exhausted").

The exhaustion inquiry for each of Thunderhorse's individual claims is addressed in Sections III(B) and III(C) below, along with other issues relevant to each claim.

**B.**     <u>**Discrimination Claims under the ADA and RA**</u>

The ADA prevents a "public entity" from discriminating against a qualified individual based on a disability.  42 U.S.C. §§ 12132-12133; *Carter as next of friend of Carter v. City of Shreveport*, 144 F.4th 809, 813 (5th Cir. 2025).[3]  Section 504 of the RA, 29 U.S.C. § 794, contains a provision with similar language, and courts "equate liability standards under § 504 of the Rehabilitation Act and the ADA."  *J.W. v. Paley*, 81 F.4th 440, 449 (5th Cir. 2023) (cleaned up), *cert. denied,* 144 S. Ct. 2658 (2024). However, the RA has more stringent standards because, unlike the ADA, it requires that the discrimination be solely by reason of the plaintiff's disability.  *Id.*; *T.O. v. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407, 416-17 & n.38 (5th Cir. 2021).

To state a claim for discrimination under ADA, a plaintiff must allege: (1) that he has a qualifying disability; (2) that he is being excluded from or denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability.  *Paley*, 81 F.4th at 449; *T.O.*, 2 F.4th at 417.[4]

Collier's motion for summary judgment construes the plaintiff's filings as raising five discrimination claims: (1) denied access to religious services; (2) denied recreation; (3) denied access to dayroom activities; (4) high cell temperatures; and (5) denied transport

---

[3]     A "public entity" includes a state government or its departments and agencies, including prisons.  42 U.S.C. § 12131(1); *United States v. Georgia*, 546 U.S. 151, 154 (2006).

[4]     Thunderhorse argues at length that he has qualifying disabilities, as required to satisfy the first element of an ADA claim (Dkt. 91, at 49-60, 64-70).  For purposes of this opinion, the Court will assume that Thunderhorse satisfies the first element.

by wheelchair van (Dkt. 82, at 5, 12-13, 17; *see* Dkt. 20, at 44 (more definite statement)). Thunderhorse's responses to the motion do not dispute the accuracy or completeness of Collier's list of claims.

All five claims are subject to dismissal under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) because, in his complaint and more definite statement, Thunderhorse failed to plead facts that could demonstrate essential elements of a discrimination claim under the ADA and RA. His more definite statement did not comply with the Court's instruction to answer separately regarding each alleged denial.[5]  Despite the Court's detailed questions, he did not provide a specific date for each alleged denial, rather stating generally that the dates of all denials "varied" and spanned a period of two to three years before he filed his more definite statement in May 2023 (Dkt. 20, at 44). He also did not answer the Court's questions about the purported reasons for each alleged denial, instead stating that the denials of multiple requests were "boilerplate," "perfunctory," and "mostly arbitrary" (*id*.). When asked how he knew that Collier denied each service, program, or activity because of Thunderhorse's disability, the plaintiff answered, "because they were requested for/because of my disabilities" (*id*.).  Therefore, taking all pleaded facts as true, and resolving every doubt on the plaintiff's behalf, Thunderhorse does not adequately state a claim for discrimination based on disability because he does not plead facts that could

---

[5]    *See* Dkt. 16, at 10-11 (Questions 6(f) & 6(g) ask detailed questions relevant to discrimination claims and instruct the plaintiff to answer separately for each claim); Dkt. 20, at 44-45 (answering Questions 6(f) and 6(g) collectively for multiple alleged denials, including denials of recreation, religious services, day room activities, and wheelchair transport).

show that the specific denials of which he complains were based on his disabilities, among other deficiencies. *See T.O.*, 2 F.4th at 417 (affirming dismissal of a discrimination claim because "none of the factual allegations contained in the complaint permit the inference that [the plaintiff] was ever discriminated against because of his disability," which is "an essential element of a discrimination claim").

Additionally, for the reasons explained below, Collier is entitled to summary judgment on the first, third, and fourth claims based on the administrative exhaustion requirement, and further grounds for summary judgment apply to some claims.  Finally, as discussed fully below in Section III(D) of this opinion, the injunctive, monetary, and declarative relief Thunderhorse seeks for all discrimination claims is unavailable.

### 1.    Access to Religious Services

Thunderhorse claims that Collier denied him access to religious services because of his disability (Dkt. 20, at 44).  Collier presents evidence that, although Thunderhorse fully exhausted his remedies regarding his request for a communal religious meal, he did not exhaust a claim regarding access to religious services (Dkt. 82, at 23; *see* Dkt. 82-1, at 290-93).[6]  In response to these arguments, Thunderhorse states only that he wrote "countless" grievances, citing without specific reference to a separate memorandum and evidence (Dkt. 91, at 30).  This conclusory assertion is insufficient to defeat the summary judgment evidence of non-exhaustion presented by Collier.  *See Favela*, 91 F.4th at 1214 (conclusory

---

[6]    Additionally, because Thunderhorse submitted the cited grievance regarding a religious meal on July 30, 2022, after he filed this lawsuit, the grievance could not properly exhaust his claim.  *See Gonzalez*, 702 F.3d at 788.

and vague statements are insufficient to demonstrate a genuine issue of material fact regarding exhaustion); *Gray*, 18 F.4th at 469 (a grievance must provide details of a particular incident sufficient to permit investigation); *Outley*, 840 F.3d at 217 & n.9 (even if evidence exists in the summary judgment record, it is not properly before the court if the plaintiff does not specifically refer to it). Because Thunderhorse does not demonstrate a genuine issue of material fact as to whether this claim was properly exhausted, Collier is entitled to summary judgment on this basis.

Collier also argues that Thunderhorse has not demonstrated a genuine issue of material fact as to whether the alleged denial of access to religious services was based on his disability. He cites to Thunderhorse's acknowledgement at deposition that, at the relevant time, his movement around the unit was limited because he was assigned to restrictive housing (Dkt. 82, at 12-13 (citing Dkt. 82-2, at 13-15)). Collier also presents TDCJ's restrictive housing plan, which permits certain religious meals or personal items in restrictive housing but does not explicitly permit attendance at religious services. *See* Dkt. 82-3, at 10, 17 (plan allows for alternate meal service to comply with approved religious diet); *id.* at 29 (plan allows possession of approved religious books or articles that are necessary for the practice of religion and do not violate prison security). Finally, Collier cites to Thunderhorse's admission at deposition that he was not prevented from practicing his religion in his cell while in restrictive housing (Dkt. 82-2, at 15-16).

Thunderhorse's responsive briefing does not cite to competent summary judgment evidence that could show demonstrate a genuine issue of material fact as to whether the alleged exclusion from religious services was based on his disability (*see* Dkt. 91, at 28-

30). Because this showing is a required element of his claim, summary judgment will be granted for Collier.

### 2.    Recreation

Thunderhorse claims that Collier denied him access to recreational programs or activities because of his disability (Dkt. 20, at 44; *see* Dkt. 91 at 28-30). Collier did not move for summary judgment based on exhaustion or the elements of Thunderhorse's recreation claim, although he seeks dismissal of all claims based on available relief, as discussed fully in Section III(D) of this opinion.

As explained above, Thunderhorse's pleadings do not allege facts that could show that Collier denied him access to recreation programs based on his disability. His more definite statement failed to comply with the Court's instructions and did not provide a specific date for the denial, the purported reason for the denial, or facts that could demonstrate that the denial was based on a particular disability (Dkt. 20, at 44). Based on his multiple pleadings (Dkt. 1; Dkt. 7; Dkt. 20) and voluminous briefing in this case, the Court is satisfied that Thunderhorse has pleaded his best case. *See Brown*, 829 F.3d at 370; *Bazrowx*, 136 F.3d at 1054. The Court therefore will dismiss his claim for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b); *see T.O.*, 2 F.4th at 417 (required elements of disability claim). The analysis of available relief, below, provides an additional basis for dismissal.

### 3.    Access to Dayroom Activities

Thunderhorse claims that Collier has denied him access to dayroom activities because of his disability (Dkt. 20, at 44). Collier presents evidence that Thunderhorse

failed to exhaust his administrative remedies for this claim because he filed two Step 1 grievances on the issue but did not appeal to Step 2. *See* Dkt. 82, at 23 (listing two Step 1 grievances regarding "solitary conditions" for which Step 2 appeals were not filed); Dkt. 82-1, at 68-75, 177-78). An inmate must to pursue a grievance through both stages of TDCJ's grievance process in order for the claim to be properly exhausted. *Johnson*, 385 F.3d at 515. As stated above in the discussion of Thunderhorse's claim regarding religious services, his conclusory assertion that he filed countless grievances is insufficient to defeat summary judgment on this issue. Therefore, Collier is entitled to judgment.

Collier also argues that Thunderhorse has not demonstrated a genuine issue of material fact as to whether he was denied access to the dayroom based on his disability. As with Thunderhorse's claim regarding religious services, Collier maintains that the denial was caused by the plaintiff's assignment to restrictive housing at the time, citing to the restrictive housing plan. *See* Dkt. 82, at 12-13; Dkt. 82-2, at 13-15 (plaintiff's deposition testimony); Dkt. 82-3 (restrictive housing plan)). Thunderhorse's responsive briefing does not direct the Court's attention to evidence that could show a genuine issue of material fact as to whether the restrictions on his dayroom access were based on his disability (Dkt. 91, at 28-30). Summary judgment will be granted for Collier on this additional basis.

### 4. High Cell Temperatures

Collier moves for summary judgment on the plaintiff's claim that high temperatures in his housing amounted to discrimination based on his disability. It appears that Thunderhorse raised this issue only in his deposition testimony, and not in his complaint

(Dkt. 82, at 12 (citing Dkt. 82-2, at 5-6); Dkt. 95, at 3-4). The more definite statement also did not list cell temperatures as an incident of alleged discrimination (Dkt. 20, at 44).

To the extent the claim is before the Court, it will be dismissed. Although Thunderhorse asserts in his briefing that he needs air conditioning due to his medical condition and medications, and that the air conditioner at the Polunsky Unit does not adequately cool the portion of the building where he is housed (Dkt. 91, at 31-33), his briefing does not clearly allege that a specific temperature was required, an actual temperature in his cell, or dates of the allegedly high temperatures. Moreover, he does not allege that he was denied the benefit of lower temperatures because of his disability. *See Paley*, 81 F.4th at 449. Therefore, because the plaintiff does not identify specific facts that could satisfy required elements of a claim for discrimination, the claim will be dismissed on summary judgment and for failure to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Additionally, Collier presents evidence that Thunderhorse did not exhaust his remedies for this claim because, although he completed both stages of the administrative process for Grievance 2021140257, he complained about heat only in the Step 2 appeal and not at Step 1 (Dkt. 82, at 20; Dkt. 82-1, at 236-39 (Grievance 2021140257)). A claim raised for the first time in a Step 2 appeal is not properly exhausted under the PLRA. *Woodford*, 548 U.S. at 92-93; *Randle*, 299 F. App'x at 467. Collier also presents records reflecting that Thunderhorse filed Grievance 2020129646 regarding heat but that the Step 1 grievance was not processed (Dkt. 82, at 20; Dkt. 82-1, at 76-77 (Grievance 2020129646)). Because he did not pursue both stages of the grievance process, this claim

18 / 37

also is unexhausted. *See Johnson*, 385 F.3d at 515.  Thunderhorse's conclusory statements that he grieved his complaints are insufficient to demonstrate a genuine issue of material fact regarding exhaustion, and summary judgment will be granted for Collier on this additional basis.

### 5.    Transport by Wheelchair Van

Thunderhorse claims that officials denied him transport by a wheelchair van (Dkt. 20, at 44).  As with the other claims above, Thunderhorse's more definite statement did not answer the Court's specific questions about this claim.  He thus does not identify facts that could satisfy the required elements of discrimination and fails to state a claim on which relief can be granted.  28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Additionally, Collier argues that Thunderhorse does not demonstrate a genuine issue of material fact as to whether TDCJ's failure to use a wheelchair van was discriminatory. Collier cites to an administrative grievance indicating that, because a wheelchair van was not available at the Polunksy Unit, the plaintiff instead was transported by ambulance (Dkt. 82, at 17; *see* Dkt. 82-1, at 282-83).  In response, Thunderhorse argues that his medical restrictions "indicate" routine transportation in a wheelchair van, citing a medical authorization on January 28, 2022, and UTMB policy (Dkt. 91, at 27-28). This response does not demonstrate a genuine issue of material fact as to whether TDCJ's alleged failure to provide transport in a wheelchair van was caused by discrimination based on his disability.  *See Paley*, 81 F.4th at 449; *Young v. TDCJ*, No. H-18-4050, 2020 WL 7865709, at *13 (S.D. Tex. Dec. 30, 2020) (dismissing discrimination claim under the ADA and RA because the plaintiff "does not allege facts showing that the defendants violated his rights

by offering transportation in a multi-person vehicle when a wheelchair van was not available or that he was denied transportation to medical appointments because of his disability"). Summary judgment will be granted for Collier.

### C.    Accommodation Claims under the ADA and RA

As stated above, a plaintiff bringing a discrimination claim under ADA must show that he has a qualifying disability; that he is being excluded from or denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and that such discrimination is by reason of his disability. *Paley*, 81 F.4th at 449. The third prong may be satisfied by a plaintiff's showing that the public entity failed to make a "reasonable accommodation." *Carter*, 144 F.4th at 814; *Valentine v. Collier*, 993 F.3d 270, 290 (5th Cir. 2021). To succeed on a failure-to-accommodate claim, a plaintiff must prove: "(1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Smith v. Harris Cty., Tex.*, 956 F.3d 311, 317 (5th Cir. 2020). The knowledge requirement in the second element is satisfied when "either (1) the plaintiff specifically identifies the disability and resulting limitations and requests an accommodation in direct and specific terms or (2) the disability, resulting limitations, and necessary reasonable accommodation were open, obvious, and apparent to the entity's relevant agents." *Carter*, 144 F.4th at 814 (cleaned up).

"An accommodation is reasonable if it does not impose undue financial or administrative burdens or fundamentally alter the nature of the service, program or activity." *Smith*, 956 F.3d at 317 (cleaned up). In making this determination for

incarcerated plaintiffs, the court's inquiry "is informed by the context of this suit—a correctional facility—and . . . [accords] deference" to correctional officials. *Wells v. Thaler*, 460 F. App'x 303, 313 (5th Cir. 2012).

Collier's motion for summary judgment construes Thunderhorse's filings as alleging that TDCJ officials denied him nine accommodations: (1) dental prostheses; (2) a four-point cane; (3) a wheelchair-accessible shower and tub; (4) a handicap sink and toilet with railings; (5) a television low enough for the plaintiff to reach; (6) a storage locker bolted to the wall; (7) ice water; (8) specialty handcuffs; and (9) various medical procedures and appointments (Dkt. 82, at 4-5; *see* Dkt. 20, at 41-43 (more definite statement)).  As with the discrimination claims, Thunderhorse's responses to the motion do not argue that Collier's list of accommodation claims is inaccurate or incomplete.

All nine claims are subject to dismissal because Thunderhorse has failed to plead facts that could demonstrate essential elements of an accommodation claim under the ADA and RA.  Although Thunderhorse lists seven of the nine claims as allegedly denied accommodations in his more definite statement,[7] he did not comply with the Court's instruction to answer separately regarding each alleged denial.[8]  Despite the Court's detailed questions, he did not provide a specific date for each requested accommodation or

---

[7]    The more definite statement does not identify ice water or specialty handcuffs as denied accommodations (Dkt. 20, at 41-42).

[8]    *See* Dkt. 16, at 9-10 (Questions 6(d) and 6(e) require the plaintiff to identify all requested accommodations and instruct him to answer separately for each denied accommodation); Dkt. 20, at 38-43 (answering Questions 6(d) and 6(e) collectively for multiple allegedly denied accommodations).

the denial; did not explain specifically why each requested accommodation was necessary; did not provide officials' reasons for each denial; and did not state how he was harmed by each denial. Instead, he asserted that multiple requested accommodations, collectively, were "denied or refused" between 2019 and 2023 for "boilerplate" reasons and that they would have "enable[d] [him] to better perform tasks of daily living" (Dkt. 20, at 42-43). Thunderhorse does not plead facts that could show that the relevant disability and limitation was known to TDCJ, that the specific accommodation at issue was directly requested or was "open, obvious, and apparent" to TDCJ, or that TDCJ failed to provide an accommodation that was reasonable, among other elements. *See Smith*, 956 F.3d at 317-18. Thus, taking all pleaded fast as true, he fails to state an accommodation claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Furthermore, Collier is entitled to summary judgment on some accommodation claims on exhaustion grounds, and additional grounds for summary judgment apply to some claims, as set out below. Finally, the relief Thunderhorse seeks for all accommodation claims is unavailable, as discussed in Section III(D) of this opinion.

### 1.    Dental Prostheses

In his more definite statement, Thunderhorse alleges that he was denied dental prostheses as an accommodation (Dkt. 20, at 41). For the reasons stated above, the more definite statement does not adequately allege facts that could demonstrate essential elements of an accommodation claim and the claim will be dismissed under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

Additionally, Collier seeks dismissal of the claim based on failure to exhaust

administrative remedies.  He presents evidence that Thunderhorse submitted his Step 1

grievance in February 2023, approximately nine months after his complaint in May 2022

(Dkt. 82, at 23, 24-25 (citing Dkt. 82-1, at 298-301 (Grievance 2023065888)); *see*

*Gonzalez*, 702 F.3d at 788 (grievance process must be completed before complaint is

filed)).  Moreover, the grievance requested a mechanical diet and not a dental prosthesis,

and thus would not have fulfilled the exhaustion requirement even if completed before this

suit. *See Gray*, 18 F. 4th at 469.  The plaintiff's responsive briefing does not demonstrate

a genuine issue of material fact regarding exhaustion of this claim.  Thus, Collier is entitled

to summary judgment on exhaustion grounds.

### 2.    Four-Point Cane

Thunderhorse alleges that officials denied him a reasonable accommodation when

they did not provide him with a four-point cane.  The plaintiff did not raise this issue in his

complaint, but only in his more definite statement (Dkt. 20, at 41).  As stated above, his

more definite statement fails to provide all required information and is inadequate to plead

required elements of this claim.

The defendant's motion argues that Thunderhorse fails to show a genuine issue of

material fact because he does not identify facts that could show that officials denied him a

reasonable accommodation.  He presents records indicating that medical personnel denied

the plaintiff a cane due to concerns for his safety (Dkt. 80-7, at 4-5 (physical therapy for

dated Sept. 27, 2022, states that Thunderhorse was not "appropriate for a quad cane at this

time . . . as [his] visual deficits create a high fall risk since [he] has to use [a] blind stick

also"); Dkt. 82-1, at 261 (grievance response dated Nov. 16, 2021 states, "When the

provider determined you were not steady enough to be assigned a cane you were issued a wheelchair")).  Thunderhorse's response does not address this point.

Although Thunderhorse apparently preferred and requested a cane, his preference is insufficient to show a genuine issue of material fact as to whether the cane was a reasonable accommodation. *See Smith*, 956 F.3d at 317-18; *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012).  To the contrary, the uncontroverted summary judgment evidence shows that officials denied the cane based on medical personnel's assessment of his medical need.  Therefore, summary judgment will be granted for Collier.

### 3.     Wheelchair-Accessible Shower and Tub

Thunderhorse claims that, after he was placed in restrictive housing due to a disciplinary case, officials no longer permitted him to leave his cell to use the wheelchair-accessible shower or tub, instead requiring him to use a caged shower with a steel door and a nine-inch curb (Dkt. 1, at 12-13; Dkt. 20, at 38-39, 41).  At deposition, he testified that he refused to use the caged shower because he was at risk of injuring himself, and instead sponge-bathed in his cell (Dkt. 82-2, at 12-13).  Because the plaintiff did not respond to the Court's questions and fails to allege facts that could prove an accommodation claim (Dkt. 20, at 41), the claim will be dismissed for failure to state a claim upon which relief can be granted.

Additionally, Collier argues that this claim must fail because Thunderhorse admitted at deposition that officials accommodated his disability while in restrictive housing by providing a foot bath for sponge-bathing (Dkt. 82, at 14-15 (citing Dkt. 82-2, at 13)). Collier presents evidence that restrictive housing is a maximum-custody status that

"separate[s] an offender from general population" in order to "maintain[] safety, security, and order among offenders, staff, and the public" (Dkt. 82-3, at 12), and argues that the shower restriction was reasonable based on the plaintiff's assignment to restrictive housing at the time. He further argues that providing a foot bath for sponge-bathing was a reasonable accommodation (Dkt. 82, at 14-15; Dkt. 95, at 5-6).

In his opposition to summary judgment, Thunderhorse argues that the caged shower, which had a nine-inch curb, was not compliant with standards under the ADA and RA. He also disputes Collier's statement that he refused to use the caged shower, instead stating that he could not use the shower without hurting himself (Dkt. 91, at 22-24). Whether or not the caged shower was compliant with the ADA, Collier has presented evidence that Thunderhorse received equipment for sponge-bathing as a reasonable accommodation. Thunderhorse does not dispute this evidence or argue that the accommodation was unreasonable under the ADA or RA. Because Thunderhorse has not demonstrated a genuine issue of material fact on this issue, summary judgment will be granted for Collier.

### 4.    Handicap Sink and Toilet with Railings

Thunderhorse claims in his more definite statement that officials denied him a reasonable accommodation when they denied his request for a handicap sink and toilet, with railings, in his cell (Dkt. 20, at 40-41; *see id.* at 38 (alleging that his cell at the Polunsky Unit lacked a handicap sink and toilet)). Collier did not move for summary judgment based on exhaustion or the elements of this claim, although he seeks dismissal of all claims based on available relief, as discussed fully in Section III(D) of this opinion.

Thunderhorse alleges that, without a handicap sink and toilet, he loses his balance,

has bruises, and has trouble flushing the toilet and using the faucet (Dkt. 20, at 40, 43; *see* Dkt. 91, at 17-18).  He also states without elaboration that he was harmed because he was not "able to . . . toilet" (Dkt. 20, at 43).  However, he did not comply with the Court's instructions to identify the specific accommodation he requested, the date of his request, the response he received from officials, or the purported reasons for the denial, but only asserted that multiple requested accommodations, collectively, were "denied or refused" between 2019 and 2023 (*id.* at 42-43). Therefore, even taking all allegations as true, the plaintiff has not pleaded facts that could demonstrate that TDCJ officials knew about his disability and consequential limitations relevant to a sink and toilet with railings, nor that a necessary, reasonable accommodation was requested or obvious.  *See Carter*, 144 F.4th at 814; *Smith*, 956 F.3d at 317.  Given his complaint, amended complaint, more definite statement, and voluminous briefing on summary judgment, the Court is satisfied that Thunderhorse has pleaded his best case on this claim.  *See Brown*, 829 F.3d at 370; *Bazrowx*, 136 F.3d at 1054.  Therefore, the Court will dismiss his claim for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Additionally, to the extent the claim is properly pleaded and the plaintiff states a claim upon which relief can be granted, summary judgment will be granted for Collier because none of the relief Thunderhorse seeks for this claim is available, as discussed below in Section III(D).

### 5.    Lowered Television

Thunderhorse argues that officials denied him a reasonable accommodation for the

television in his cell because the television was too high for him to reach.  Although this claim was not in his initial complaint, he raised it in his more definite statement (Dkt. 20, at 39, 41-43).  As with the claims above, his more definite statement does not adequately plead the elements of an accommodation claim. *See* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Additionally, Collier moves for summary judgment on this claim.  He explains that, when Thunderhorse was first arrived at the Polunsky Unit in May 2020, he was assigned to Cell 9 in the infirmary, or "10 building," and that he later was transferred to Cell 10 in the same building (Dkt. 82, at 6-7 (citing Dkt. 1, at 7; Dkt. 20, at 39)).

Regarding the television in Cell 9 of the infirmary, Collier presents evidence that Thunderhorse's requested accommodation was granted. Thunderhorse's more definite statement acknowledges that, when he lived in Cell 9, "maintenance lowered [his] TV so [he] could reach the controls" (Dkt. 20, at 39).  His summary judgment response asserts that the television in Cell 9 was "merely lowered four inches" (Dkt. 91, at 13). However, to the extent Thunderhorse argues that the granted accommodation was not reasonable, Collier presents evidence that he failed to exhaust any claim regarding an inadequate accommodation (Dkt. 82, at 22 (citing grievance records); *see* Dkt. 82-1, at 98-99 (Step 1 grievance regarding television in Cell 9 was unprocessed); Dkt. 82-1, at 100-01 (same); Dkt. 82-1, at 22-23 (no appeal filed from Step 1 grievance regarding television in Cell 9)). Thunderhorse's responsive filings fail to demonstrate a genuine issue of material fact on the exhaustion issue.

Regarding the television in Cell 10, the plaintiff alleges that the television also was

too high and that his grievances were not answered (Dkt. 20, at 39). Collier presents evidence that Thunderhorse did not complete the grievance process before filing suit in May 2022 (Dkt. 82, at 22, 24 (citing grievance records); *see* Dkt. 82-1, at 194-95 (Step 1 grievance regarding television in Cell 10 filed on June 12, 2023)). Thunderhorse does not directly respond to this argument (Dkt. 91, at 13-16). Therefore, summary judgment will be granted for Collier on exhaustion grounds regarding the television in Cell 10. *See Gonzalez*, 702 F.3d at 788.

### 6.    Bolted Storage Locker

Thunderhorse alleges in his more definite statement that officials denied him a reasonable accommodation for his disabilities when they did not bolt his storage locker to the wall (Dkt. 20, at 41). Collier did not move for summary judgment based on exhaustion or the elements of this claim, but he seeks dismissal of all claims based on available relief, as discussed fully below.

As with other claims, Thunderhorse did not answer the Court's detailed questions regarding the locker and thus did not provide basic facts about his claim, including the date of his request for a bolted locker, the date of the alleged denial, the purported reason for the denial, or why this accommodation was necessary. His summary judgment briefing also does not identify specific facts supporting these elements of the claim (Dkt. 91, at 19-22). Among other deficiencies, he has not pleaded facts that could demonstrate that TDCJ officials knew about his disability and consequential limitations, nor that they denied him a necessary, reasonable accommodation that was requested or obvious. *See Carter*, 144 F.4th at 814; *Smith*, 956 F.3d at 317.

The Court is satisfied that, given Thunderhorse's multiple pleadings and responses, he has pleaded his best case on this claim. *See Brown*, 829 F.3d at 370; *Bazrowx*, 136 F.3d at 1054. His claim will be dismissed for failure to state a claim on which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Additionally, to the extent the claim is properly pleaded and the plaintiff states a claim upon which relief can be granted, the relief he seeks is not available, as discussed below.

### 7.    Ice Water

Collier's motion seeks summary judgment regarding Thunderhorse's claim that he was denied ice water as an accommodation for a qualifying disability. Thunderhorse alleges in a brief, but not a pleading, that he was denied ice water in the infirmary on unspecified dates (Dkt. 21, at 42-43). As stated above, his more definite statement did not answer the Court's questions regarding an accommodation claim on this basis and is inadequate to plead the required elements of a claim. Moreover, the plaintiff acknowledges in his summary judgment response that officials at the Polunksy unit provided inmates in the infirmary with ice water "upon request" until 2023 (Dkt. 91, at 32), which is after this lawsuit was filed, and the Court has not granted him leave to supplement his pleadings. Therefore, he fails to plead a viable claim for accommodation and his claim will be dismissed. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Additionally, Collier presents evidence that Thunderhorse did not fully exhaust a claim regarding the provision of ice water (Dkt. 82, at 23 (listing one unprocessed grievance and one unappealed grievance); *see* Dkt. 82-1, at 36-37 (unappealed grievance);

Dkt. 82-1, at 83-84 (unprocessed grievance)).  The plaintiff's responsive briefing does not demonstrate a genuine issue of material fact regarding exhaustion of this claim (Dkt. 91, at 31-33).  Summary judgment therefore will be granted for Collier on this basis.

### 8.    Specialty Handcuffs

Thunderhorse alleges that, after he arrived at the Polunsky Unit, Dr. Ernestine Julye changed his special-needs handcuff pass to "conform[] to security's wishes," causing him "extreme pain and suffering" due to his "frozen shoulder" (Dkt. 1, at 15; *see* Dkt. 20, at 23 (stating he is limited by a frozen shoulder)).  Thunderhorse's more definite statement did not list specialty handcuffs as a denied accommodation (*id*. at 41).  Because his complaint does not identify facts that could satisfy the elements of an accommodation claim, and because his more definite statement does not answer the Court's specific questions regarding such a claim, his claim will be dismissed for failure to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Additionally, Collier seeks summary judgment on the claim, arguing that Dr. Julye's decision rested on her medical judgment and not on security concerns (Dkt. 82, at 16 (citing *Nottingham*, 499 F. App'x at 377)).  Thunderhorse does not directly respond to the argument and does not demonstrate a genuine issue of material fact as to whether officials denied him a reasonable accommodation.  *See Smith*, 956 F.3d at 317-18.

### 9.    Medical Procedures and Appointments

Thunderhorse's more definite statement lists various medical issues as denied accommodations, including a fourth eye surgery (corneal transplant), eyelid follow-up surgery, access to a neurology clinic, and follow-up appointments with allergy and

dermatology clinics (Dkt. 20, at 41-42).[9]  He concedes in his summary judgment response that he received four eye operations and three corneal transplants during his incarceration and, subsequently, "deci[ded] not to have any additional transplants" (Dkt. 91, at 25).

To the extent Thunderhorse brings an accommodation claim regarding medical issues, the claim will be dismissed for failure to state a claim upon which relief can be granted. As with other accommodations claims above, the plaintiff did not follow the Court's instructions to provide the date of his request or the alleged denial, why each requested accommodation was necessary, the reasons for the denial, or how he was harmed by the denial (Dkt. 20, at 42-43).  He thus fails to plead facts that could show that he requested and was denied a specific accommodation or that a necessary and reasonable accommodation was requested from officials or obvious to them.  *See Smith*, 956 F.3d at 317-18.[10]

Collier moves for summary judgment on these claims, arguing that the plaintiff merely challenges decisions by medical providers and thus fails to state a valid claim under the ADA or RA for a denied accommodation (Dkt. 82, at 8, 15-17) (citing, *inter alia*, *Nottingham*, 499 F. App'x at 377 (even in cases in which medical care is denied, "[t]he

---

[9]    His claims regarding denied requests for dentures, a four-point cane, specialty handcuffs, and transport by wheelchair van are discussed above and need not be further addressed here.

[10]    Additionally, to the extent Thunderhorse's pleadings could be construed as alleged disability discrimination in medical decisions, his more definite statement did not answer the Court's questions about when he was denied a specific benefit, who denied him the benefit, or the purported reason for the denial (Dkt. 20, at 44). He thus does not plead facts that could show discrimination under the ADA or RA. *See Paley*, 81 F.4th at 449.

ADA is not violated by "a prison's simply failing to attend to the medical needs of its disabled prisoners"). Thunderhorse's briefing fails to demonstrate a genuine issue of material fact on the claim (Dkt. 91, at 25-28). Therefore, summary judgment will be granted for Collier.

### D.    <u>Relief</u>

The defendant seeks summary judgment and dismissal of all of Thunderhorse's claims because the relief he seeks is unavailable (Dkt. 82, at 26-29; Dkt. 95, at 9-10).

Thunderhorse's original complaint sought (1) a declaratory judgment in his favor under the Constitution, federal law, state law, and international law, (2) an injunction ordering the defendant to transfer him to the Connecticut Department of Corrections and to submit a "comprehensive plan" to release other similarly situated inmates or place them in nursing facilities, and (3) compensatory damages in the amount of $15,000 for unspecified claims, among other relief (Dkt. 1, at 27-28). His amended complaint incorporated by reference the relief sought in his original complaint.[11] Although the Court later instructed Thunderhorse to state specifically the relief he sought, his more definite statement did not answer the Court's questions.[12] However, in a brief submitted with his

---

[11]    The amended complaint was filed on the Court's form, which instructs the plaintiff to "[s]tate briefly exactly what you want the court to do for you" (Dkt. 7, at 4).

[12]    *See* Dkt. 16, at 13 (order for more definite statement instructed Thunderhorse to "[s]tate specifically the declarations that you seek" from the Court (Question 10); to "[s]tate what you want the Court to order Collier to do or stop doing" (Question 11); and to "[e]xplain why you believe that Collier should be liable for [monetary] damages" (Question 12)). Thunderhorse's more definite statement skipped from Question 9 to Question 13 (Dkt. 20, at 48).

more definite statement, Thunderhorse requested injunctive relief in the form of "transfer to my domicile/place of birth Connecticut to live out my term under constitutionally adequate conditions until [his] death or release" and "receivership" for others "similarly situated"; compensatory damages of $500 for "destroyed property"; punitive damages of $1,000 to "redress ongoing violations" of law and "prior agreements"; and a declaration regarding "violations proven at trial" and Collier's duty to correct the violations (Dkt. 21, at 59-60).

The Court is satisfied that the plaintiff has had ample opportunity to specifically plead his requests for relief and has pleaded his best case. *See Brown*, 829 F.3d at 370; *Bazrowx*, 136 F.3d at 1054.

### 1.    Injunctive Relief

Collier argues that Thunderhorse's request for injunctive relief is overbroad, citing 18 U.S.C. § 3626 (Dkt. 82, at 28-29).  Thunderhorse seeks a transfer to Connecticut to finish his sentence "under constitutionally adequate conditions" (Dkt. 21, at 60; *see* Dkt. 91, at 123 (requesting "all injunctive relief necessary to protect him from intentional discrimination as well as his right to equal protection of all constitutional rights"); Dkt. 96-1, at 23-25 (citing TDCJ policy and caselaw)).

A prisoner may not obtain a prospective relief under the PLRA unless the court first finds that such relief is narrowly drawn, extends no further than necessary to correct the harm the court finds requires preliminary relief, and is the least intrusive means necessary to correct the harm. See 18 U.S.C. § 3626(a)(2). In considering a prisoner's request for prospective relief, the reviewing court "shall give substantial weight to any adverse impact

33 / 37

on public safety or the operation of a criminal justice system" caused by the relief and shall respect the certain principles of comity where state or local law is concerned. 18 U.S.C. § 3626(a)(1); *see Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (prison administrators are accorded wide-ranging deference in the adoption and execution of policies that, in their judgment, are needed to preserve internal order and discipline in the daily operations of the prison system).

Here, Thunderhorse does not demonstrate that his request for a transfer to Connecticut or a receivership for other inmates is narrowly drawn or the least intrusive means necessary to correct any alleged violation of the ADA or RA.[13]  Therefore, summary judgment will be granted for Collier on this issue and his request for injunctive relief will be **denied**.

### 2.      Damages

Collier argues that the relevant sections of the ADA and RA do not permit compensatory damages unless the plaintiff shows intentional discrimination and, additionally, do not permit damages for pain and suffering or emotional distress (Dkt. 82, at 26-27; Dkt. 95, at 9-10).  To successfully bring a claim for monetary damages under the ADA, a plaintiff must show intentional discrimination. *Paley*, 81 F.4th at 449-50; *T.O.*, 2

---

[13]     Thunderhorse's briefing argues that prison transfers can be appropriate injunctive relief, citing multiple cases decided before the PLRA was enacted (Dkt. 96-1, at 23-25). He also cites to *Brown v. Plata*, 563 U.S. 493 (2011), a case in which the Supreme Court affirmed a three-judge panel's holding that, based on proven violations of the Eighth Amendment in California prisons and other factors, the injunctive relief ordered by the panel was authorized by the PLRA and permissible under § 3626.  These authorities do not support a claim that a transfer to Connecticut is appropriate injunctive relief in this case.

F.4th at 417 (discrimination claim); *Smith*, 956 F.3d at 317-18 (accommodation claim).

Thunderhorse's summary judgment response does not engage Collier's arguments and does not demonstrate a genuine issue of material fact as to whether he is entitled to monetary damages.  *See* Dkt. 91, at 122-23; Dkt. 96-1, at 22-23.  Therefore, summary judgment will be granted on this basis. *See Outley*, 840 F.3d at 217 & n.9 (even if evidence exists in the summary judgment record, it is not properly before the court if the plaintiff does not specifically refer to it).[14]

Collier also seeks dismissal of Thunderhorse's demand for punitive damages. Because punitive damages are not available under provisions regarding the ADA or RA provisions regarding public entities such as prisons, *see Barnes v. Gorman*, 536 U.S. 181, 189 (2002), summary judgment will be granted on this issue and all claims for punitive damages will be dismissed.

### 3.    Declaratory Relief

The Declaratory Judgment Act states that a federal court, upon the filing of an appropriate pleading, may declare the rights of an interested party. 28 U.S.C. § 2201.  The act "confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (cleaned up); *see Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000) (a court has "broad discretion to decide or

---

[14]    Additionally, Thunderhorse's more definite statement seeks compensatory damages only for his property claims (Dkt. 21, at 60).  Since the time he filed the statement, the Court has dismissed these claims (Dkt. 62).  Therefore, all requests for compensatory damages have been dismissed.

dismiss a declaratory judgment action"). A request for declaratory judgment is subject to dismissal if the plaintiff does not plead a substantive claim or pleads insufficient facts. *Warren v. Bank of Am., N.A.*, No. 3:11-CV-3603-M, 2012 WL 3020075, at *7 (N.D. Tex. June 19, 2012), *report and recommendation adopted,* 2013 WL 1131252 (N.D. Tex. Mar. 19, 2013), *aff'd,* 566 F. App'x 379 (5th Cir. 2014).

In this case, Thunderhorse's original complaint and amended complaint requested no specific declarations, other than a declaration that unidentified "acts" of the defendant violate the consent decree in *Ruiz v. Estelle*, Civil Action No. 4:78-0987 (S.D. Tex.). *See* Dkt. 1, at 28; Dkt. 7, at 4. Although the Court's order for a more definite statement instructed Thunderhorse to "[s]tate specifically the declarations that you seek," (Dkt. 16 at 13 (Question 10)), his brief accompanying his more definite statement requests only a declaration of "violations proven at trial" and Collier's duty to redress the violations (Dkt. 21, at 59; *see* Dkt. 91, at 123 (the plaintiff's summary judgment response states without elaboration that he "is entitled to declaratory relief")).

The Court is satisfied that Thunderhorse has pleaded his best case for declaratory judgment. *See Brown*, 829 F.3d at 370. Because he has not identified specific declarations he seeks for alleged violations of the ADA and RA, the Court in its discretion will dismiss his request for declaratory judgment. *See Warren*, 2012 WL 3020075, at *7. The substantive rulings throughout this opinion further support dismissal of his request. *See Yager v. Stroman*, No. 1-17-CV-00217-ADA, 2020 WL 2615759, at *11 (W.D. Tex. May 22, 2020) ("if a request for a declaratory judgment adds nothing to an existing lawsuit, it need not be permitted," citing *Pan-Islamic Corp. v. Exxon Corp.*, 632 F.2d 539, 546 (5th

Cir. 1980)).

## IV.    **CONCLUSION**

For the reasons stated above the Court now **ORDERS** as follows:

1.    The plaintiff's motion to exceed the page limit (Dkt. 96) is **GRANTED**.

2.    The defendant's motion for summary judgment (Dkt. 82) is **GRANTED**.

3.    All of the plaintiff's claims are **DISMISSED with prejudice** under Rule 56, 28 U.S.C. § 1915(e)(2)(B), and 28 U.S.C. § 1915A(b).

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on _____August 28_____, 2025.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE